**In the Matter of LANDMARK CAPITAL COMPANY, Debtor.**

**Bankruptcy No. 82–B–10045.**

United States Bankruptcy Court, S. D. New York.

April 7, 1982.

Moses & Singer, Seward & Kissel, New York City, for movant, North Central Development Co.; Robert Rosenberg, Eugene P. Souther and Dan F. Laney, III, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for debtor; Michael L. Cook, Zachary B. Kass and Kayalyn A. Marafioti, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for Chase Manhattan Bank; Alan W. Kornberg, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

On January 8, 1982, Landmark Capital Company (Landmark or debtor) filed its petition in this court for the protection afforded by Chapter 11 of the 1978 Bankruptcy Reform Act, 11 U.S.C. § 1101 et seq. (Supp. IV 1980), Pub.L. 95–598, 92 Stat. 2549 et seq. Landmark's Chapter 11 petition predicates its choice of venue on the fact that both its domicile and principal place of business are in New York.

On the heels of this filing, North Central Development Company [1] (North Central), the holder of a $29 million secured claim against Landmark and Landmark's single largest creditor,[2] filed a motion to change the venue of this case to the United States bankruptcy court in Arizona as it believes

---

1. North Central Development Company is an Arizona partnership composed of Del E. Webb Corporation, an Arizona corporation, and Harry and Newton Rosenzweig, both citizens and residents of Arizona.

2. Landmark's schedules indicate approximately $52,000,000 in outstanding liabilities and over $55,000,000 in assets.
The following creditors are scheduled:

Prudential Insurance Co. of America for $7,071,446.69; Massachusetts Mutual Life Insurance Co. for $6,452,339; North Central Development Company for $29,000,000; and Chase Manhattan Bank for $5,500,000.
Each creditor has a security interest in the Rosenzweig Center in Phoenix, Arizona. See footnote 8, infra.

venue is improper here. 28 U.S.C. §§ 1477 [3] and 1475.[4]

Alternatively, North Central asks for a transfer "in the interest of justice and for the convenience of parties" if. venue is found to be proper here. 28 U.S.C. §§ 1472,[5] 1475.

Not surprisingly, the debtor stands by its original choice of this forum and opposes the transfer. However, aware that this court may see things otherwise, Landmark urges retention even if it were determined that New York is the improper forum. 28 U.S.C. (Supp. IV 1980) § 1477.

■ As the question of the transfer of a Chapter 11 case is one governed by the words Congress wrote, the place to begin is with the language of the controlling provisions. 28 U.S.C. (Supp. IV 1980) §§ 1472, 1475, 1477. The interfacing of these provisions is to the effect that a case properly or improperly filed in a district may be transferred whenever the "interest of justice and convenience of the parties requires." [6] The burden is on the moving party to demonstrate by a fair preponderance of the evidence that a transfer is warranted as the transfer of a case from one district to another is a cumbersome disruption of the Chapter 11 process. *In re Valley Fair Cor-*

*poration,* 16 C.B.C. 586 (Bkrtcy.S.D.N.Y. 1978). The resolution of this matter is left to the sound discretion of the court, based on its understanding of the requirements of the particular case and an understanding of the process that is Chapter 11 for "discretionary choices are left to a court's judgment, a judgment to be guided by sound legal principles." *In re Valley Fair Corp., supra* at 589.

And so the court now turns to the facts. Landmark is a New York general partnership, organized and existing under New York law. Both of its general partners, Eli Waserstein and N. Richard Kalikow, are New York residents and domiciliaries. Landmark has an office in New York City which it shares with numerous Kalikow affiliates.

North Central disputes this proposition. It is of the opinion that the New York office is a sham for, *inter alia,* Landmark has no telephone listing at that address and pays no rent for its use.[7] But, it is clear that notwithstanding the irregularity of this arrangement, the entire record supports Landmark's position. Clearly, the New York "Kalikow" office is the place where Landmark's partners operate its business—the purchase, development and management of real estate.

**3.** "28 U.S.C. § 1477 (Supp. IV 1980).
Cure or waiver of defects.
(a) The bankruptcy court of a district in which is filed a case or proceeding laying venue in the wrong division or district may, in the interest of justice and for the convenience of the parties, retain such case or proceeding, or may transfer, under section 1475 of this title, such case or proceeding to any other district or division."

**4.** "28 U.S.C. § 1475 (Supp. IV 1980).
Change of venue.
A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties."

**5.** "28 U.S.C. § 1472 (Supp. IV 1980).
Venue of cases under title 11.
Except as provided in section 1474 of this title, a case under title 11 may. be commenced in the bankruptcy court for a district—
(I) in which the domicile, residence, principal place of business, in the United States, or principal assets, in the United States, of the person

or entity that is the subject of such case have been located for the 180 days immediately preceding such commencement, or for a longer portion of such 180-day period than the domicile, residence, principal place of business, in the United States, or principle assets, in the United States, of such person were located in any other district;"

**6.** See, *Matter of Olde Concorde Associates,* 16 C.B.C. 611, 613 (Bkrtcy.S.D.N.Y.1978). *In re Maidman,* 2 B.R. 569, 5 B.C.D. 1334 (Bkrtcy.S. D.N.Y.1980) aff'd in an unreported decision by the District Court (Motley, D. J.) and affirmed *sub nom. Compass Investment Group v. Maidman,* 668 F.2d 682 (2nd Cir. 1982). Although both these cases arose under the 1898 Bankruptcy Act's Chapter XII and involved change of venue considerations under Bankruptcy Rule 116(b), 411 U.S. 1013, the standard remains unchanged. The 1898 Act was repealed on October 1, 1979 by virtue of Section 401(a) of Title IV of the 1978 Bankruptcy Reform Act.

**7.** See affidavit of Dan F. Laney.

Landmark's current real estate holdings include both Arizona and New York real estate. However, there is no dispute that Landmark's principal asset is its Arizona holding, the "Rosenzweig Center" in Phoenix, a $55 million, fifteen acre office and hotel complex that is the centerpiece of downtown Phoenix urban renewal.[8] Landmark had purchased this property from North Central in October, 1980 for $54 million, and it was Landmark's inability to meet a $29 million October 1, 1981[9] installment that precipitated the filing of a fraud action for rescission or damages in the United States District Court for Arizona. It was only after District Judge Hardy of that court failed to grant Landmark injunctive relief against foreclosure on January 7, 1982 that the Chapter 11 petition was filed. Indeed, Landmark's Chapter 11 petition indicates that it considers its bankruptcy case to be ancillary to the Arizona District Court's action.[10]

Landmark's New York property consists of an undivided 50% fee simple absolute interest in real property in Queens valued at $330,357. Landmark has no interest in the buildings on the land.[11] The property is subject to two long term leases, and the lessee is itself in Chapter 11 in the Eastern District of New York. Landmark has an action pending in that court to lift the automatic stay attendant upon that filing. 11 U.S.C. (Supp. IV 1980) § 362. Landmark's books and records are maintained in New York.[12] Its accountants are in New York and its tax returns are prepared here.

Landmark has three bank accounts, two in New York and one in Arizona, and it is clear that only the Arizona account is used for the day to day management of the Rosenzweig Center.

The Rosenzweig Center, except for the hotel portion, is managed by Del E. Webb Realty & Management Company (Del Webb), whose duties encompass full responsibility for the day to day operation of this large complex. These duties include solicitation of new tenants, the servicing of existing tenants, the purchase of materials, compiling the operating books and records and operating reports. Leases are negotiated by Del Webb, with the proviso that they are subject to the approval of Landmark's partners. Management also handles billing and payment of bills, including Landmark's debt service on the Rosenzweig Center. However, Del Webb is not authorized to draw a check for over $5,000, unless approved by either Waserstein or Kalikow. Del Webb currently employs 42 full time employees whose sole responsibility is for the Rosenzweig Center. Messrs. Kalikow and Waserstein have made very few visits to Phoenix, as most matters are handled more expeditiously by telephone.

This overview suggests that Landmark's enterprise is structured in a bifurcated fashion; the major decisions and general supervision come from New York; the day to day management of the Arizona property is at its situs.

New 28 U.S.C. § 1472(1) predicates venue of a bankruptcy case[13] on the location of a

---

8. This property is developed with three high rise and two-two story buildings totalling approximately 1,100,000 square feet of space, including a 383 room hotel and an indoor parking facility.

9. Of the purchase price, $37,043,457.97 was evidenced by a note payable in full on or before February 27, 1981. On December 31, 1980 the parties agreed to extend this maturity date to October 1, 1981.

10. See Landmark's Chapter 11 petition, Exh. C, affidavit of N. Richard Kalikow, at 2.

11. This property consists of 28 acres improved by 37 garden apartment buildings containing 746 apartments.

12. Although Landmark does not have any employees of its own, an employee of an affiliated company housed in the same office maintains its books and records and manages its bank accounts. See Deposition of Eli Waserstein, January 27, 1982 at 118.

13. Distinction must be drawn between the venue of a bankruptcy case under Section 1472 and the venue of a civil proceeding arising in or related to a bankruptcy case under new 28 U.S.C. § 1473.

A bankruptcy case, as distinguished from the myriad civil proceedings arising in or related to that case, is commenced when a petition is filed. 11 U.S.C. § 101(31).

The dispute here centers on the venue of the Chapter 11 case itself.

debtor's domicile, residence, principal place of business or principal assets.[14] As it is clear that Landmark's principal assets are in Arizona, it must be determined whether Landmark's domicile, residence or principal place of business is in this district. The court concludes that the venue here is proper as both Landmark's domicile and principal place of business are in this district.

North Central's position on the proper venue alternatives should be noted at this point, for, notwithstanding the clear language of the statute, that party would have this court read "domicile and residence" out as proper venue choices in a case involving a partnership debtor. Simply said, North Central's position is that domicile and residence have no bearing, a position without support in the statute, but with some judicial and treatise appeal. *In re Greenridge Apartments*, 13 B.R. 510, 512, 7 BCD 856 (Bkrtcy. Hawaii 1981); 1 *Collier on Bankruptcy* (15th ed.) Par. 3.02 k(ii).

North Central's position has some practical attraction but this court cannot ignore the plain language of the words Congress wrote in defining venue standards, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976), in the absence of clear expression that those words should mean more or less than the meaning they spontaneously yield.

New 28 U.S.C. § 1472 is derived from Section 2(a) of the Bankruptcy Act of 1898,

11 U.S.C. (1976 ed.) § 11(a), and Rule 116(a) of the Rules of Bankruptcy Procedure, 411 U.S. 1012.[15] Section 2(a)(1),[16] like new Section 1472, applied to all bankruptcy cases, and the courts did not quarrel with that Congressional choice. See, *In re Hudik-Ross Co.*, 198 F.Supp. 695, 698 (D.C.S.D.N.Y. 1961), affirmed 297 F.2d 32 (2d Cir. 1961) (venue is proper under Section 2a in the district where a corporation is domiciled). *Accord, In re Enjay Holding Co., Inc.*, 18 F.Supp. 445, 447 (D.C.S.D.N.Y.1937). And, though it is true that Rule 116(a)[17] of the Bankruptcy Rules elminated domicile and residence as useful bases for determining venue of a corporation or partnership, Congress did not see fit to carry this scheme forward in new 28 U.S.C. § 1472. As Landmark is a New York partnership, venue is proper in this district. *Accord, In re FtM Ltd. Partnership*, No. 80 C 600, Slip Op. (N.D.Ill. June 19, 1980) (unreported decision).

Moreover, even if its domicile were not an available basis for proper venue, New York is Landmark's principal place of business and venue is proper here on that ground alone. Undaunted by the statute, North Central also attacks this proposition for, as it sees it, Landmark's principal and only significant place of business is Arizona, where its principal asset, the Rosenzweig Center is managed. North Central cites two cases in support of its position, *In re*

---

**14.** 11 U.S.C. § 102(5) provides: "or" is not exclusive. The legislative history is clear that a party is not limited to a mutually exclusive choice between alternative choices. H.R.Rep. No.95–595, 95th Cong., 1st Sess. (1977) 315; Sen.Rep.No.95–989, 95th Cong., 2d Sess. (1978), 28, U.S.Code Cong. & Admin.News 1978, p. 5787.

**15.** H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977) 446; Sen.Rep.No.95–989, 95th Cong., 2d Sess. (1978) 155.

**16.** Section 2(a)(1) invests the bankruptcy courts with jurisdiction, *inter alia*, to
"(1) Adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months . . .".

Although couched in terms of jurisdiction, the courts and applicable authorities have consistently held that this section is a true venue provision and is not jurisdictional. *Bass v. Hutchins*, 417 F.2d 692, 694 (5th Cir. 1969), cited in *In re Maidman*, 2 B.R. 569, 581, at fn. 66.

**17.** Rule 116(a)(2) reads as follows:
"(a) Proper Venue.
(2) Corporation or Partnership. A petition by or against a corporation or partnership may be filed in the district (A) where the bankrupt has had its principal place of business or its principal assets for the preceding 6 months or for a longer portion thereof than in any other district; or, (B) if there is no such district, in any district where the bankrupt has property."

*Commonwealth Oil Refining Co., Inc.*[18], 596 F.2d 1239 (5th Cir. 1979), *cert. den.*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980), and *In re Greenridge Apartments, supra.*[19] However, a close reading of those cases does not support North Central's position; in fact, that reading undercuts that position.

The determination of the location of a debtor's principal place of business is a question of fact. *Commonwealth Oil, supra*, at 1245. And, in coming to this determination, the court is guided by the Fifth Circuit's holding in *Commonwealth Oil* that the place where the debtor makes its major business decisions constitutes the principal place of business of a debtor, notwithstanding the physical location of its assets or production facilities. *Commonwealth Oil, supra*, at 1244, 1247. The place whence general supervision is given may constitute a partnership's principal place of business. *Commonwealth Oil, supra, Greenridge Apartments, supra.*

Under this standard it is clear that New York is the proper venue for Landmark's Chapter 11 as the overall management, coordination and financing of its business originates in this district. New York is plainly its "financial heart". And courts have refused to hold venue improper on far more tenuous contacts. See, *In re FtM Limited Partnership, supra*, where the district court held that the bankruptcy court had not erred in refusing to hold venue improper in Illinois where an Illinois partnership's only business was owning and operating a mobile home park in Florida. In *In re Marina Enterprises*, 5 C.B.C.2d 434, 14 B.R. 327, 8 BCD 59 (Bkrtcy.S.D.Fla. 1981), the court held venue to be proper in Florida although the sole asset and majority of contacts were in New Jersey.

But to find and hold that New York is a proper venue for Landmark's Chapter 11 petition does not end the inquiry. Under new 28 U.S.C. § 1475, when a petition is filed in the proper district, it is nonetheless still within the court's discretion to transfer the bankruptcy case to another district. And, North Central has sustained its burden of proof in establishing that this Chapter 11 case should be transferred to the bankruptcy court in Arizona. It is this court's view that the property and affairs of this real estate investment partnership can be most efficiently and expeditiously administered in the bankruptcy court closest to the situs of its major asset, and that the Chapter 11 process can best unfold there.

The guidance offered by Section 1475 is that transfer must be "in the interest of justice and for the convenience of the parties". This amorphous standard offers little guidance as to the proper case for transfer and the courts are left to a case by case determination based upon all relevant factors. Hard and fast rules and dogmatic adherence to case law can be misleading.

With this understanding, the following factors have emerged as aids in determining the forum offering the greatest convenience:

"(1) proximity of creditors of every kind to the court;

(2) proximity of the bankrupts to the court;

(3) proximity to the court of the witnesses necessary to the administration of the estate;

---

**18.** In *Commercial Oil*, the court declined to transfer the venue of a Chapter XI case from the Western District of Texas, the location of the debtor's executive offices to the district where its physical plant was located—Puerto Rico. In so holding, the court rejected the Government of Puerto Rico's contentions that the debtor's principal place of business was in Puerto Rico, the location of its customers and its refinery. The court determined that the debtor's "financial heart" was in Texas, and that Texas was its principal place of business.

**19.** In *Greenridge Apartments*, 7 BCD 856, 13 B.R. 510 (Bkrtcy.Hawaii 1981), the court determined that the place of business of an Hawaiian partnership was in Hawaii, where all major decisions were made, notwithstanding the fact that its principal asset was located and managed in Washington. However, the court did transfer this case "in the interest of justice and for the convenience of parties" pursuant to new 28 U.S.C. § 1475.

(4) location of the assets and

(5) the economic and efficient administration of the estate."

*In re Commonwealth Oil Refining Co., Inc., supra* at 1247; *In re Valley Fair Corporation, supra* at 586.

■ Landmark's schedules enumerate four creditors, three of which are in Arizona. The negotiations for the loans underlying all debts, other than that owed Chase, occurred in Arizona and debt service was made from Phoenix. Finally, the security for all of Landmark's secured creditors is the Rosenzweig Center in Arizona.

As previously noted, the Rosenzweig Center is managed in Phoenix by Del Webb. This is where those with the most knowledge of Landmark's affairs, other than the partners, are located. The majority of those who may be directly involved in the Chapter 11 process will be the Del Webb employees responsible for the day to day operation of the Rosenzweig Center, for only they will be in a position to supply the necessary information as to the debtor's operations. It should also be noted that Landmark's operating books and records are maintained by Del Webb in Arizona. It is plain that Landmark, of necessity, will be required to and will be able to gather needed information relevant to the administration of this case in Arizona.

It certainly would be most convenient for the court closest to Landmark's creditors and property to administer this estate. The Arizona Court is in the best position to meet any emergencies and to maintain close contact with the property, including the evaluation of the local appraisals which will be almost inevitably called for.

Furthermore, if liquidation should occur, the Arizona Court would be in the best position to appoint a local trustee knowledgeable enough to speedily administer the estate. Whatever inconvenience may be experienced by the partners is most certainly outweighed by these considerations.

Transfer of this case would be consistent with the principle that the estate of a real estate partnership is most efficiently ad-ministered where its principal asset is. *In re Greenridge, supra*, 13 B.R. at 513; *In re Macon Uplands Venture*, 1 C.B.C.2d 385, 2 B.R. 444, 5 BCD 1279 (Bkrtcy.Md.1980).

Finally, it is clear that the "interest of justice" will be best served by transfer. As the debtor's principal asset is in Arizona, rulings may be required in accordance with local law, and the Arizona Court is in a better position to make such decisions. See, *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Moreover, there is a local interest in having localized controversies decided at home. As the Rosenzweig Center is the centerpiece of Phoenix, housing offices that employ over 4,000 individuals, there is a substantial local interest in the success of the Chapter 11 or the proper sale of the Center in the event of liquidation.

And, even if all things were equal, the pendency of the fraud action in the Arizona District Court against North Central, the moving party here, would sway the court to order transfer.

And something more needs to be said about transfer in "the interest of justice" in the context of all the facts upon which the Chapter 11 in this district impacts, indeed, upon which the Chapter 11 impacts wherever it unfolds.

Congress provided no dictionary for the meaning to be ascribed to the phrase. And while it has been given gloss by the cases, sometimes, even without definition or gloss "the interest of justice" is more felt than seen. It is so here.

When Landmark filed this Chapter 11 petition, the reach of the automatic stay section, 11 U.S.C. § 362, gave it even more than District Judge Hardy had refused to give. The secured creditors were legitimately frustrated for not only was their cup full of the debtor's defaults, but it ran over when their foreclosure efforts were suddenly stayed by a Chapter 11 which even Landmark casts as merely ancillary to the Arizona lawsuit. And, speaking of that lawsuit, the net effect of the Chapter 11 case here is that North Central, one of these creditors, must fight to vindicate its inter-

ests in two courts nearly a continent apart. That gap should be closed, a result consistent with "the interest of justice" to be achieved here by transfer of the Chapter 11 to Arizona.

The motion is granted. Let an order be entered transferring this Chapter 11 and all its papers to the Bankruptcy Court at Phoenix.