**In re SUZANNE DE LYON, INC. a/k/a SDL, Inc. a/k/a Suzanne de Lyon, Inc., U.S.A., Debtor.**

**Bankruptcy No. 90–B–10672 (PA).**

United States Bankruptcy Court, S.D. New York.

April 2, 1991.

Haight, Gardner, Poor & Havens [1] by Jon Yard Arnason, New York City, J. Douglas Sutter,[2] Griggs & Harrison, Houston, Tex., for Allan James et al.

Winick & Rich, P.C. by Jonathan L. Flaxer, New York City, for Suzanne de Lyon, Inc.

## MEMORANDUM DECISION DENYING MOTION TO TRANSFER VENUE

PRUDENCE B. ABRAM, Bankruptcy Judge.

A voluntary Chapter 11 petition was filed by Suzanne de Lyon, Inc. a/k/a SDL, Inc. a/k/a Suzanne de Lyon, Inc. U.S.A. ("SDL" or "Debtor") at 4:54 p.m. on March 2, 1990. Minutes earlier Suzanne Frame a/k/a Suzanne de Lyon ("Frame"), an individual and major shareholder of SDL, filed her own Chapter 11 petition.

Allan James, et al., an alleged creditor of the Debtor and of Frame, moved to transfer venue of the two cases to the Bankruptcy Court for the Southern District of Texas (the "Texas Bankruptcy Court"). Following a partially consolidated trial, this court determined that Frame's case was not properly venued in this district and transferred that case to the Texas Bankruptcy Court. See *In re Frame*, 120 B.R. 718

---

**1.** Counsel for Allan James et al. has been permitted to withdraw as counsel since the hearing on this motion.

**2.** *See* footnote 1.

(Bankr.S.D.N.Y.1990). Familiarity with that decision is assumed.

The Debtor maintains that venue of the instant case is proper in this district and therefore this case should remain here. Several creditors, including the two major secured creditors, have opposed the motion to transfer venue.

Based on the findings of fact which follow and for the reasons set forth below, this court finds that venue is appropriate here and that this case should remain in this district.

## STATEMENT OF FACTS

In 1986, Frame and her husband, Jack, founded and incorporated SDL in Texas. A certificate of incorporation for SDL was issued by the Texas Secretary of State on July 2, 1986, which listed the Debtor's registered office as 1360 Post Oak Boulevard, Suite 2425, Houston, Texas 77056 (the "Houston Office"). No subsequent change of address has been recorded with the Texas Secretary of State.

The Debtor is currently qualified to do business only in Texas. SDL prepared and filed an application to become qualified to do business in New York shortly before filing the Chapter 11 petition. At the time of the hearing on the venue motion the application was on hold, awaiting tax clearance from the New York State Taxing Authorities.

SDL developed a perfume and marketed it under the name Animale. Animale is packaged in a distinctive and elaborate bottle.

The 180–day period preceding the filing of the Debtor's petition spanned the period from September 3, 1989 to March 1, 1990 (the "Venue Period"). SDL maintained the Houston Office throughout the Venue Period. Its main function has been and continues to be that of a "back office" for the Debtor's operations. The Debtor maintains several Houston phone numbers and fax numbers for direct telephone orders and, with the exception of Frame, the entire staff of five or six work exclusively out of the Houston Office. The Debtor's books and records are maintained there and the Debtor's payroll obligations and most of its bills to suppliers and advertisers are paid from the Houston Office. The Debtor has several bank accounts in New York and in Houston. The Debtor pays Texas state taxes and employee insurance for its Texas employees.

Animale is manufactured in New Jersey for the Debtor by an independent contractor. The Debtor supplies many of the component parts to the contractor. The parts and finished inventory are stored in warehouses in New Jersey and Connecticut. The Debtor employs independent contractors throughout the United States to solicit contracts and promote the product.

Throughout the course of the Debtor's existence, Frame, as president and chairman, has made frequent trips to New York City to meet with suppliers, advertisers and designers, as well as with various lending institutions to arrange financing for the Debtor's operations. During the early years of the Debtor's existence, Frame regularly rented a suite at the Helmsley Palace in New York City, at a rate of $800– $1000 per night, in order to hold these business meetings. This practice proved to be extremely expensive and in September of 1988, the Debtor leased a two-bedroom apartment (the "Apartment") in Trump Parc, located at 106 Central Park South, at a monthly rent of $5,000.00. The Debtor renewed the Apartment lease for an additional year in September of 1989. Frame stayed in the Apartment while in New York City and held meetings and conducted the Debtor's business affairs from the Apartment.

Frame testified that beginning in January 1989 she began to spend more and more time in New York City, concentrating on international sales and meeting with the various suppliers and bankers. She also contemplated opening a full-time New York office in order to be closer to the manufacturing operations for Animale. While in New York, Frame continued to maintain contact with the Houston Office. As president, she made all management and financial decisions and these decisions were re-

layed to the Houston Office for implementation. Since Frame was and still is the only employee who spends any significant time in New York, she has often employed an outside secretarial service for her everyday business needs.

In October of 1989 after negotiations in New York City, Frame engaged the firm of Drexel Burnham Lambert to explore the possibility of selling the Debtor's stock or arranging new financing for the company. With Frame's assistance, Drexel Burnham Lambert drafted a memorandum for potential buyers and/or investors outlining the company's operations and organizational structure. That memorandum states that the Debtor's office is located in Houston. During the Venue Period, Frame also met with various banks in New York to discuss possible financing for SDL. In her discussions with Drexel Burnham Lambert and the many bankers, Frame did not advise them that the Debtor had an office in New York.

A review of the Debtor's Chapter 11 petition reveals that of the seventy-eight (78) unsecured creditors, approximately thirty-one (31) are headquartered in the New York metropolitan area. Twenty are in New York while eleven are in New Jersey or Connecticut. Twenty-three (23) of the unsecured creditors are located in Texas, while the remaining twenty-four (24) are spread throughout the rest of the country and England. The New York creditors' claims represent approximately 52% of the total unsecured debt.

Of the twenty largest unsecured creditors, seven are located in New York and an additional four are in New Jersey or Connecticut. Four of the New York creditors, SGD Glass, Emson Research, Miles Ellison Ltd. and Hearst Corp., have filed affidavits in opposition to the motion to transfer venue. None of the Texas creditors have filed similar affidavits in support of the transfer motion.

Additionally, two of the four secured creditors, Banque Indosuez and Hong Kong Bank which hold 97% of the secured debt, are located in New York. The other two are based in Houston. Both Banque Indosuez and Hong Kong Bank desire that this case remain in New York.

## DISCUSSION

■ By virtue of Bankruptcy Rule 1014(a)(2), the Court may not retain an improperly venued case and must either transfer the case or dismiss it. The statute governing the propriety of venue is 28 U.S.C. § 1408 which states:

"Except as provided in Section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty day period than the domicile, residence, or principal place of business in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership."

■ Venue of this case in this district cannot be predicated on the affiliate venue provision found in subsection (2). It would be a perversion of that provision to find a second case to be properly venued on the basis that there was a prior filing by an affiliate when the affiliate's case has been held to be misvenued.

Whether venue of this case in this district is proper must be determined solely by reference to subsection (1) of Section 1408. Subsection (1) specifies four alternative grounds for venue: domicile, residence, principal place of business and principal assets. Domicile and residence generally apply to individuals and not to corporations.

The Debtor asserted that venue is proper in New York because it has its principal place of business in New York. The Debt-

or's papers also suggest that the location of the Debtor's principal asset, the Animale trademark, provides basis for venue in this district.

■■■ The question of what constitutes the principal place of business is one of fact. *In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239, 1245 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980) (decided under former Bankruptcy Act and Rules) (hereinafter "CORCO"). It is necessary in each case to consider the character of the corporation, its purposes and its activities. *In re Dock of the Bay*, 24 B.R. 811, 815 (Bankr. E.D.N.Y.1982). Central to this determination is where the debtor makes its major business decisions, for this constitutes the principal place of business of a debtor, notwithstanding the physical location of its assets or production. *In re Pavilion Place Associates*, 88 B.R. 32, 35 (Bankr.S.D.N.Y. 1988), *citing In re Landmark Capital Co.*, 19 B.R. 342, 347 (Bankr.S.D.N.Y.1982), *aff'd sub nom. Landmark Capital Co. v. North Central Dev. Co.*, 20 B.R. 220 (S.D. N.Y.1982). Thus, the principal place of business of a corporate debtor is primarily "the place whence general supervision is given." *In re Landmark Capital Co.*, 19 B.R. at 347.

In *In re Pavilion Place Associates*, 88 B.R. at 35, the Court held that the Debtor's principal place of business was in New York and venue there was therefore proper as it was established that personnel in the New York office made all managerial decisions, supervised the daily operation of a Minnesota shopping center and undertook the financial planning for the debtor. Notably, in that case the debtor was a Connecticut partnership with a registered office and employees in Minnesota. *Id.* at 33.

■■ In the case of the Debtor, that district is New York and therefore venue here is proper. The undisputed evidence reveals that corporate management and control are the exclusive domain of Frame and Frame exercised her control during the Venue Period principally while in New York City. During the Venue Period, Frame supervised the production of the Animale prod-

uct while in New York City. Frame is the only employee involved with the international sales and she alone makes all of the decisions involving product lines and production, purchasing, marketing, sales and all financial decisions, both for the domestic and international aspects of the business. The Debtor's comptroller, Reba Tolbert, described Frame as the "hub" of the Debtor's operations and stated that the Houston Office's main function was to perform the support functions that allowed Frame's ideas to be implemented.

Beginning in January of 1989, Frame spent increasing amounts of time in New York discussing potential financing and arranging the international sales of Animale. During the six months preceding the filing of the petition, approximately 98% of sales were in the international market and Frame's meetings with suppliers, manufacturers, advertisers and lending institutions all took place in the New York City metropolitan area.

It is clear that most of the Debtor's creditors, including the two secured creditors, knew that Frame conducted the Debtor's business while in New York City and met with her in the New York City metropolitan area about the Debtor's business affairs. Moreover, even the Movants were aware through their counsel that the Debtor leased the Apartment since that fact had been made known by the receiver appointed in litigation in Texas in which they were engaged with the Debtor and Frame.

In light of the evidence presented and under the standard set forth in *CORCO* and *Landmark Capital*, this court finds that the Debtor's principal place of business was New York and therefore venue is proper in this district. *Compare In re Bell Tower Associates, Ltd.*, 86 B.R. 795 (Bankr.S.D.N.Y.1988) (debtor's principal place of business held to be New York where it was uncontested that the promoter of partnership and principal owner of property group make over-all management decisions in New York).

This court concedes that, on the facts of this case, the question of principal place of business is a close one. The court is partic-

ularly mindful that the evidence is that the Debtor never formally identified New York City as its principal place of business prior to its Chapter 11 filing. It is important to emphasize, however, that this is not a case in which the Debtor had no permanent physical location within the jurisdiction. The Debtor was the lessee of the Apartment and paid the rent for the Apartment throughout the Venue Period.

In light of this court's determination that venue is proper under the principal place of business test, it is unnecessary for the court to decide the technical issue of where a trademark is located and whether this would be a sufficient independent ground for invoking venue under section 1408.

Having found venue to be proper in this district, the court must now consider whether transfer of the case to Texas Bankruptcy Court would be in the interest of justice.

### Transfer Under Section 1412

Section 1412 states that:

"A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

See also Bankruptcy Rule 1014(a)(1).

█ In deciding whether to transfer venue of a case, the following criteria are relevant: (1) the proximity of creditors of every kind to the court; (2) the proximity of the debtor to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if liquidation should result. *In re Commonwealth Oil*, 596 F.2d 1239.

█ The burden of proof concerning the transfer of venue rests with the movants in any given case. They must prove by a fair preponderance of the evidence that a transfer is warranted, for transfer is a cumbersome disruption of the Chapter 11 process. *In re Pavilion Place*, 88 B.R. at 35.

█ The proximity of the creditors in this case clearly favors retaining the case in New York. There are more unsecured creditors in the New York metropolitan area than there are in Texas. Of particular significance is the desire of the two secured banks to keep the case in New York. As the creditors with the most to lose from this bankruptcy, they are the true interested parties in this case and their opinion as to what would be most convenient for them carries great weight since the possibility of a distribution to unsecured creditors, including the movants, is problematic.

The proximity of the Debtor also favors keeping the case in New York although the Debtor is incorporated in Texas. Frame, the Debtor's president and the executive who makes all of the management and financial decisions of the company, now resides in New York.

In terms of the proximity of witnesses, New York is as convenient as Texas for the Debtor's employees. The only person other than Frame whose testimony may be needed is Ms. Tolbert, and she has made numerous trips to New York in the past. The secured creditors who may be required to testify as to use of cash collateral or post-petition financing are located in New York. Although the books and records of the company are kept in Houston, these records could easily be transported to New York when needed. Consequently, this factor does not weigh in favor of transfer.

Both the Debtor and the movants agree that the only valuable assets of the Debtor are the inventory and the Animale trademark. It is undisputed that the inventory is held in warehouses in New Jersey and Connecticut. Any issues which arise respecting the inventory can be handled most expeditiously in this district. Likewise, sale of the Debtor's assets can easily be supervised in this district. As for the trademark, it has been pledged to Banque Indosuez and it does not have a physical location. The Debtor's physical assets which are located in Texas are modest and consist of office furniture and equipment. Thus consideration of the location of the

Debtor's assets favors retention of the case in New York.

The final two *CORCO* factors, the economic administration of the case and the necessity for ancillary administration in the event of liquidation also militate against transfer of this case.

As for potential ancillary administration, that potential is modest in light of the security interests in the Debtor's assets. In any event, structuring the Chapter 11 proceeding with the anticipation of its failure is inconsistent with its rehabilitative purpose, and should not form the basis for transfer of venue. *See, e.g., In re Fairfield Puerto Rico, Inc.,* 333 F.Supp. 1187, 1191 (D.Del.1971).

■ When deciding whether or not to transfer venue, the most important consideration is where the economic administration of the Chapter 11 case can best be accomplished. In practical terms, "that concern translates into inquiry of the need for post-petition financing pursuant to Section 364 of the Code, the need to obtain financing to fund a plan of arrangement and the location of the sources of that financing and the management personnel in charge of obtaining it." *In re International Filter Corp.,* 33 B.R. 952, 956 (Bankr.S.D.N.Y.1983). None of the practical aspects of administering this case favor transfer of venue.

Movants have made much ado about the litigation currently pending in the Southern District of Texas. They maintain that the current posture of that litigation indicates a level of dishonesty and fraudulent intent on Frame's part which would endanger the value of the Debtor if left in her hands. Yet movants have not petitioned this court for the appointment of a Chapter 11 trustee or for conversion of the case to a Chapter 7 proceeding. Rather, they have attempted to have the automatic stay modified to allow the Texas action to proceed, which motion this court denied after a duly noticed hearing.[3]

Based upon the testimony and evidence presented, it is this court's view that the economic administration of this case which most benefits the creditors would be more readily accomplished in New York. Thus, this court finds that transfer is not warranted at this time.

For all of the foregoing reasons, the movant's motion to transfer venue of this case to the Texas Bankruptcy Court is denied.

---

**3.** The court denied the movant's motion to modify the stay on the record at the May 10, 1990 hearing. Subsequently, it became necessary to reduce this oral denial to a written order after the district court in Texas issued an order to show cause indicating that the stay in this case had terminated under § 362(e) of the Code, for failure to have a hearing within thirty days of the filing of the motion. This court held an emergency hearing on May 11, 1990 at which time it signed an order denying movant's motion and stating that the automatic stay had not expired and had continued in full force and effect. Movant's New York counsel reviewed this order prior to the court's entering it and did not object to its form or contents.