**In re WASHINGTON, PERITO & DUBUC, Debtor.**

**Bankruptcy No. 92 B 46973 (PBA).**

United States Bankruptcy Court, S.D. New York.

June 2, 1993.

Crowell & Moring by Mark D. Plevin, Washington, DC, for Connecticut General Life Ins. Co.

Baker & Hostetler by Frederick W. Chockley, Washington, DC, for Jack I. Bender & Sons.

Marilyn Simon, by Marilyn Simon, Carrie A. Gordon, New York City, for Partnership Debtor.

Milbank Tweed Hadley & McCloy by Christopher A. Teano, Jayson Jarushewsky, New York City, for Francis Musselman as Liquidation Trustee of Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey.

Togut, Segal & Segal by Albert Togut, New York City, for Liquidation Committee of Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey.

Kelley Drye & Warren by William E. Hammond, New York City, for NationsBank of D.C., N.A.

### MEMORANDUM DECISION GRANTING MOTION BY CREDITORS TO TRANSFER VENUE

PRUDENCE B. ABRAM, Bankruptcy Judge.

On December 17, 1992, several partners of the law firm Washington, Perito & Dubuc (the "Partnership Debtor") filed an involuntary Chapter 11 petition against the Partnership Debtor in the Bankruptcy Court for the Southern District of New York. Two creditors [1] of the Partnership

---

**1.** The movants are Jack I. Bender & Sons and Connecticut Life Insurance Company (collectively, the "Movants"). Bender was the landlord of the Partnership Debtor's Washington D.C. offices. The Partnership Debtor's lease with Bender commenced on January 1, 1988 and had an expiration date of August 31, 1996. It is listed in the Partnership Debtor's filed schedule of unsecured creditors as having a disputed claim of $1,349,617.84. In its papers, however, Bender alleges claims in excess of $5,000,000. Bender is also a plaintiff in an action for breach of a real property lease and breach of guaranty obligations which was commenced in the Superior Court for the District of Columbia against the Partnership Debtor and each of the partners of the Partnership Debtor prior to the filing of the petition. Connecticut General carried sever-

Debtor have moved to transfer venue of this case to the Bankruptcy Court for the District of Columbia pursuant to 28 U.S.C. § 1408 and Bankruptcy Rule 1014(a)(2), on the grounds that venue is not proper in this district. Alternatively, if venue is proper, the creditors move to transfer this case to the Bankruptcy Court for the District of Columbia in the interest of justice and for the convenience of the parties pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(1). The Partnership Debtor opposes both prongs of the motions and maintains that venue is properly laid in the Southern District of New York and the case should remain here. A hearing was held on March 26, 1993. Post-petition memoranda of law were subsequently submitted by all interested parties.

Based on the findings of fact which follow and for the reasons set forth below, the court finds that venue is not properly laid in this district and grants the motions to transfer venue of this case to the Bankruptcy Court for the District of Columbia.

## STATEMENT OF FACTS

1. The Partnership Debtor was a general partnership engaged in the practice of law. It was organized under the laws of the District of Columbia in January of 1988.

2. At its height, the Partnership Debtor consisted of approximately thirty six partners, including professional corporations (the "Partners") and maintained offices in Washington, D.C.; New York, New York; Baltimore, Maryland; and Fairfax County, Virginia. The Partnership Debtor's main office was its Washington D.C. office.

3. The Partnership Debtor ceased its practice in August of 1991 and since that time has been in the process of winding down its business.

al of the Partnership Debtor's insurance policies and has an alleged claim of $700,000. It is also the plaintiff in an action for breach of an insurance agreement which was commenced in the District Court for the District of Columbia against the Partnership Debtor and each of the partners of the Partnership Debtor prior to the filing of the petition. Both of these actions were stayed upon the filing of the petition.

4. On December 17, 1992, several partners of the Partnership Debtor filed an involuntary Chapter 11 petition against the Partnership Debtor in the Bankruptcy Court for the Southern District of New York.

5. The 180–day period preceding the filing of the Partnership Debtor's petition spanned the period from June 21, 1992 to December 16, 1992 (the "Venue Period").

6. Pursuant to an agreement dated August 5, 1991 (the "Agreement"), the Debtor hired Hildebrandt, Inc. ("Hildebrandt"), a New Jersey-based consulting firm to act as its "executive director" to administer the liquidation of its assets, the collection, compromise and settlement of its bills and the satisfaction of its liabilities.

7. Hildebrandt operated through its offices in New Jersey and Texas.

8. Hildebrandt conducted its activities on behalf of the Partnership Debtor from August 1991 through February 1993, when the Partnership Debtor terminated the Agreement.

9. The Partnership Debtor also appointed a committee of several partners (the "Wind–Down Committee") to represent it in working with Hildebrandt to wind down its affairs. At all relevant times, Hildebrandt was subject to the supervision of the Wind–Down Committee.

10. The Wind–Down Committee has always held its meetings in the District of Columbia, including its meetings during the Venue Period.[2]

11. During the Venue Period, the Partnership Debtor maintained a bank account in the District of Columbia.

12. During the Venue Period, the Partnership Debtor's major assets consisted principally of its accounts receivables.

2. All of the Wind–Down Committee members reside and work in the District of Columbia area. In addition, thirty five of the thirty-six Partners reside in the District of Columbia or its surrounding areas.

13. The Partnership Debtor's twenty one largest accounts receivables[3] are owed by account debtors located throughout the United States as well as by one foreign account debtor. The three largest account debtors are the Government of Angola, which owes $807,000, the Home Insurance Company which owes $63,000 and Joseph Weichselbaum, who owes $75,000. The accounts receivables owed by the other eighteen of the twenty one largest account debtors include several District of Columbia account debtors which owe an aggregate of $1,372,000. The remaining accounts receivables are owed by account debtors located in California, Missouri, Texas, Pennsylvania and Antigua.

14. The Government of Angola, a country on the continent of Africa, has a presence in the United States in both New York City, at its mission to the United Nations, and at its mission on L Street, N.W., in the District of Columbia. All services performed by the Partnership Debtor on behalf of the Government of Angola (which included lobbying Congress and the executive branch) took place in the District of Columbia.

15. The Home Insurance Company ("Home") is a New Hampshire corporation. At the time the Partnership Debtor performed services for Home, Home's principal place of business was New York. However, after the Partnership Debtor ceased providing legal services to Home, Home moved its headquarters to New Jersey.

16. Nationsbank of D.C., N.A. ("NationsBank") is the Partnership Debtor's principal secured creditor. It holds debt in excess of $4.7 million which is secured by liens on the Partnership Debtor's assets, including its accounts receivables.

17. Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey ("Finley Kumble") is one of the largest unsecured creditors of the Partnership Debtor with a claim in the approximate amount of $4.5 million.

18. Finley Kumble is also a debtor before this court and is represented by Francis H. Musselman, the court appointed trustee (the "Finley Kumble Trustee"). Finley Kumble was a New York partnership engaged in the practice of law. Prior to the filing of an involuntary petition under Chapter 7 on February 24, 1988 by several banks which were creditors, Finley Kumble was the fourth largest law firm in the United States with offices in California, Florida, Maryland, Texas, Louisiana and Washington, D.C. On March 4, 1988 this court converted Finley Kumble's Chapter 7 case to a voluntary Chapter 11 case. On March 7, 1988, this court appointed the Finley Kumble Trustee.

19. Following the dissolution of Finley Kumble, thirty one of the partners of Finley Kumble who practiced in Finley Kumble's Washington, D.C. office, together with certain other attorneys, formed the Partnership Debtor.

20. An order of confirmation confirming Finley Kumble's Plan of Reorganization (the "Finley Kumble Plan") was signed by this court on December 9, 1991. One of the objectives of the Finley Kumble Plan was a consensual settlement of claims by and against Finley Kumble and its partners arising out of the circumstances of Finley Kumble's bankruptcy. In order to fund a substantial portion of the Finley Kumble Plan, most of the Finley Kumble partners agreed to enter into Partner Settlement Agreements which provided for individual partner contributions to the Finley Kumble Plan.

21. The thirty one of the Partnership Debtor's Partners who were also partners of Finley Kumble individually owe an additional $4.96 million to the Finley Kumble Trustee under their individual Partnership Settlement Agreements.

22. Although there is a common thread between Finley Kumble and the Partnership Debtor, this case was not designated as a related case at the time it was filed

---

3. The twenty-one largest accounts receivables are those accounts receivables which exceed $60,000.

and it is happenstance that this case was assigned to the same judge as was handling the Finley Kumble case. No party has suggested that the two cases are affiliated as defined in the Bankruptcy Code. Further, even though Finley Kumble is an unsecured creditor of the Partnership Debtor, the two debtors have different partners, different creditors, different assets and different liabilities.

## PROCEDURAL BACKGROUND

The Movants have each made a motion to transfer venue of this case pursuant to 28 U.S.C. § 1408 and Bankruptcy Rule 1014(a)(2), alleging that venue in this district is improper. Alternatively, the Movants seek to transfer this case to the District of Columbia in the interest of justice and the convenience of the parties pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(1).

The Partnership Debtor, the Finley Kumble Trustee, the Finley Kumble Liquidation Committee and NationsBank have opposed the Movant's motions. The Finley Kumble Trustee has submitted the most extensive papers and for the most part, the other parties have incorporated by reference the Finley Kumble Trustee's response in their own. Unless otherwise noted, references to the response of the Partnership Debtor encompass the response of the Finley Kumble Trustee.

## DISCUSSION

The court is faced with the unusual situation of determining the appropriate venue for a case where the Partnership Debtor ceased operating approximately sixteen months prior to the commencement of the bankruptcy case.

This court has previously held that by virtue of Bankruptcy Rule 1014(a)(2), it may not retain an improperly venued case and must either transfer the case or dismiss it. *See In re Frame*, 120 B.R. 718, 722 (Bankr.S.D.N.Y.1990) and *In re Suzanne de Lyon*, 125 B.R. 863, 866 (Bankr. S.D.N.Y.1991). Recognizing a split of authority on this issue has developed, *see, e.g. In re Lazaro*, 128 B.R. 168 (Bankr. W.D.Tex.1991), the court permitted the parties to submit post-trial memoranda on whether a bankruptcy court may retain an improperly venued case based on oral argument at the March 26th hearing.

In their briefs, the Movants argue that pursuant to 28 U.S.C. § 1406(a)[4] and Bankruptcy Rule 1014, a bankruptcy court may not retain an improperly venued case. Instead, the court's only options are either to dismiss the case or to transfer venue. The Partnership Debtor and the Finley Kumble Trustee argue that 28 U.S.C. § 1406 is inapplicable in bankruptcy cases and they contend that pursuant to 28 U.S.C. § 1412[5], a bankruptcy court is empowered to retain an improperly venued case where it is in the interest of justice or the convenience of the parties. They also urge that the portion of Bankruptcy Rule 1014 dealing with bankruptcy cases is invalid because it is not only inconsistent with 28 U.S.C. § 1412, but it actually amends 28 U.S.C. § 1412. The parties regard this overstepping of authority as explicitly prohibited by 28 U.S.C. § 2075, the statute under which Congress has vested authority in the Supreme Court of the United States to prescribe rules governing procedure and

---

**4.** Under 28 U.S.C. § 1406(a), the district court's change of venue statute, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." By its terms, 28 U.S.C. § 1406(a) applies only to improperly venued cases. It does not contain any explicit reference to title 11 or bankruptcy. The bankruptcy court exercises the authority of the district court from which it obtains its reference.

**5.** The statute which governs change of venue for bankruptcy proceedings is 28 U.S.C. § 1412. Section 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Section 1412 does not specifically address the retention of improperly venued cases.

practice in bankruptcy cases and proceedings.[6]

■■■ Where two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880–81, 81 L.Ed.2d 815 (1984). After a thorough review of the statutes, Bankruptcy Rule 1014 and the cases cited in the parties' briefs, this Court has determined to adhere to the position previously stated in *Frame* and *Suzanne de Lyon.*

When Bankruptcy Rule 1014 was amended to its present form in 1987, the Advisory Committee added a note, which contains a specific reference to Section 1406 and states in pertinent part:

"Both paragraphs 1 and 2 of subdivision (a) are amended to conform to the standard for transfer in 28 U.S.C. § 1412. Formerly, 28 U.S.C. § 1477 authorized a court either to transfer or retain a case which had been commenced in a district where venue was improper. However, 28 U.S.C. § 1412, which supersedes 28 U.S.C. § 1477, authorizes only the transfer of a case. The rule is amended to delete the reference to retention of a case commenced in the improper district. Dismissal of a case commenced in the improper district as authorized by 28 U.S.C. § 1406 has been added to the rule * * * * "

It is clear that the Advisory Committee believed that 28 U.S.C. § 1406 governs when a bankruptcy case is improperly venued. This Court acknowledges that this is certainly not the only possible interpretation of the statutes. However, Congress was aware of the issue when Bankruptcy Rule 1014 was amended and the Court presumes that if Congress believed that Bankruptcy Rule 1014 abridged, enlarged or modified any rights under Title 28, it would not have allowed such rule to become effective.

This Court therefore determines to follow Bankruptcy Rule 1014(a)(2) as written.

The Court thus holds that it may only dismiss this case or transfer it, if the Court determines venue in this district is improper.

It is therefore necessary to determine whether venue of this case is properly laid in this district. The criteria used to establish proper venue for cases under title 11 is governed by 28 U.S.C. § 1408, which states in relevant part:

"* * * a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal asserts in the United States, of such person were located in any other district;

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership."

Venue of this case in this district cannot be predicated on the affiliate venue provision found in subsection (2) of 28 U.S.C. § 1408 because there was no case pending for any affiliate, general partner or partnership of the Partnership Debtor at the time the petition was filed.

Whether venue of this case is proper must be determined solely by subsection (1) of 28 U.S.C. § 1408. Subsection (1) specifies four grounds for venue: domicile, residence, principal place of business in the United States or principal assets in the United States. Thus, in order to determine if the Partnership Debtor's Chapter 11 case properly belongs in this District, the court must determine whether the Debtor's domicile, residence, or principal place of busi-

---

**6.** Under 28 U.S.C. § 2075, however, these rules "shall not abridge, enlarge or modify any sub- . stantive right."

ness is in this District or if the Partnership Debtor's principal assets are located here.

The burden rests on the Movants to demonstrate by a preponderance of the evidence that the Chapter 11 petition was filed in the wrong district. *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 149 B.R. 365, 368 (Bankr.S.D.N.Y.1993); *In re Vienna Park Properties*, 120 B.R. 320, 327 (Bankr. S.D.N.Y.1990), *vacated in part and remanded on other grounds*, 125 B.R. 84 (S.D.N.Y.), *on remand*, 128 B.R. 373 (Bankr.S.D.N.Y.1991).

It has been stated that the only meaningful test for venue of a partnership is where it has its principal place of business or where its principal assets are located. *In re Vienna Park*, 120 B.R. 320, 327; *In re Bell Tower Associates, Ltd.*, 86 B.R. 795, 799 (Bankr.S.D.N.Y.1988). Since the test is in the alternative, venue may properly lie in more than one district.

1. LOCATION OF PARTNERSHIP DEBTOR'S PRINCIPAL PLACE OF BUSINESS

The determination as to the location of the principal place of business of a partnership rests on a determination of fact. *In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239, 1245 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); *In re Suzanne de Lyon, Inc.*, 125 B.R. at 867. Central to this determination is where a debtor makes its major business decisions, for this constitutes the principal place of business of a debtor notwithstanding the physical location of its assets. *Suzanne de Lyon*, 125 B.R. at 867; *In re Landmark Capital Co.*, 19 B.R. 342, 347 (Bankr.S.D.N.Y.), *aff'd sub nom.*, 20 B.R. 220 (S.D.N.Y.1982). In cases where an entity is undergoing dissolution, such as liquidation, the principal

place of business is in the district where the "winding up" activity is taking place. *See In re Ryan*, 38 B.R. 917, 920 (Bankr. N.D.Ill.1984); *See also Matter of Evans*, 85 F.2d 92, 93 (2d Cir.1936) ("the place of winding up is the principal place of business, while any genuine winding up remains"). Thus, the principal place of business is primarily "the place whence general supervision is given." *Landmark Capital*, 19 B.R. at 347.

Although the Partnership Debtor may have ceased functioning as a law firm in August 1991, since August 1991 and continuing throughout the Venue Period, the effort to wind-down the affairs of the Partnership Debtor has occurred in the District of Columbia.[7] During this time the wind-down effort has been directed and supervised by the Wind–Down Committee which is comprised of five of the Partnership Debtor's Partners who made and continue to make the major business decisions for the Partnership Debtor after consultation with the other Partners of the Partnership Debtor.

The activities of the Wind–Down Committee took place almost exclusively in the District of Columbia. All meetings of the Wind–Down Committee's members took place in the District of Columbia. The Wind–Down Committee reported to other Partners at meetings held in the District of Columbia. No meetings of the Wind–Down Committee or the partnership have taken place in New York. Moreover, the Partnership Debtor's checking account during the Venue Period was located at a Washington D.C. branch of Sovran Bank, N.A. and checks were issued from that account on at least two occasions in the two weeks prior to the filing of the petition.

Finally, thirty five of the thirty-six Partners of the Partnership Debtor, including

---

**7.** The Partnership Debtor's existence as a partnership in the District of Columbia continued with its efforts to wind down its affairs. At all times the Partnership Debtor has been a general partnership organized under the laws of the District of Columbia. Sections 41–128 through 41–130 of the District of Columbia Code (1990 rep.vol., 1992 supp.) which governs partnerships organized therein, specifically states that the dissolution of a partnership is caused " * * * by the bankruptcy of any partner or the partnership" and that "[o]n dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." As such, the Partnership Debtor is still a recognized partnership entity in the District of Columbia.

all the members of the Wind–Down Committee, practice law in the District of Columbia and reside in the District of Columbia or the surrounding area. While the location of the Partners is not determinative of the venue of the Partnership Debtor, *Vienna Park,* 120 B.R. at 327, it may be influential in determining where the Partnership Debtor's major managerial decisions are made. *Id.; See also Bell Tower,* 86 B.R. at 799.

In their responses to the Movants' motions, the Partnership Debtor and the Finley Kumble Trustee have not argued that New York was the Partnership Debtor's principal place of business, but rather that because the Partnership Debtor's principal place of business was not located in the District of Columbia, venue is not proper in that district. The Partnership Debtor and the Finley Kumble Trustee urge that because the Partnership Debtor ceased operations and closed its offices in August, 1991, and concurrently appointed Hildebrandt to manage its wind-down, if there was a principal place of business at all during the Venue Period it would be where Hildebrandt had its offices.[8] Aside from the fact that under this theory the proper venue for this case would lie in either New Jersey or Texas, the Partnership Debtor and the Finley Kumble Trustee would have this court find that the principal place of business was located not where the Partnership Debtor made its business decisions, but instead where its subcontractor was located. The court finds that their reliance on this theory is misplaced. *See, In re Garden Manor Associates, L.P.,* 99 B.R. 551, 553 (Bankr.S.D.N.Y.1988) (holding that

the debtor's principal place of business was located where the major business decisions and supervisory management functions took place, not where the independent contractor operated the debtor on a day to day basis); *Landmark Capital,* 19 B.R. at 345 (holding that the debtor's principal place of business was where the debtor's partners were located since they, not the management firm, made the debtor's major business decisions).

Given that Hildebrandt's activities at all times were subject to the supervision and control of the Wind–Down Committee and the Partners, and that the Wind–Down Committee and the Partners made all major business decisions, the court finds that the evidence establishes that the District of Columbia was the Partnership Debtor's principal place of business during the Venue Period.

## 2. LOCATION OF ASSETS

The Movants' contend that the Partnership Debtor's principal assets were not located in this district during the Venue Period, thus, failing to support proper venue in this court. In response, the Partnership Debtor and the Finley Kumble Trustee argue that the Partnership Debtor's accounts receivables were its only remaining assets during the Venue Period, and that the situs of such assets is where the account debtor (the "Account Debtor") of such assets is located. Therefore, they argue, venue is proper in this district because the largest portion of the Partnership Debtor's accounts receivables are owed by Account Debtors located in New York.[9]

---

**8.** Although the Partnership Debtor and the Finley Kumble Trustee contend that Hildebrandt had been appointed to manage the firm and administer the liquidation of the assets during the wind down period, the Agreement made clear that although Hildebrandt was invested with the title of "executive director" it had no decision making power with respect to the partnership's affairs. The Partnership Debtor and the Finley Kumble Trustee further contend that important business decisions never rested with the Wind–Down Committee and that the Wind–Down Committee acted merely as a conduit for information flowing from Hildebrandt to the Partners. However, this assertion is itself an

admission that the Partners were, in fact, directing the affairs of the Partnership Debtor.

**9.** According to Partnership Debtor and Finley Kumble Trustee calculations of the amounts owed by the Partnership Debtor's twenty-one largest Account Debtors, $807,000 was owed by three "New York Account Debtors." It is equally important to note, however, that out of the twenty-one largest Account Debtors listed by the Partnership Debtor and the Finley Kumble Trustee, $1,372,000 of outstanding accounts receivables are owed by District of Columbia area Account Debtors. The remaining accounts receivables are owed by Account Debtors located in California, Missouri, Texas, Pennsylvania and

The purpose of statutory venue requirements is to ensure that a case is filed in a forum that is convenient for the parties in interest. *See United States of America v. Laird,* 412 F.2d 16, 20 (2d Cir.1969). Thus, unlike a court's determination of whether it has jurisdiction over a party through that party's "minimum contacts" with the forum, a court's analysis when considering venue will be based on the appropriateness of the forum. *See generally, Id.*

Given these considerations, the court must disagree with the Partnership Debtor's contention that the Partnership Debtor's assets are located in this district. The Partnership Debtor and the Finley Kumble Trustee have cited *Angulo v. Kedzep Ltd.,* 29 B.R. 417 (S.D.Tex.1983); *In re World of English, N.V.,* 16 B.R. 817 (Bankr. N.D.Ga.), *aff'd sub nom. Bank of America, N.T. & S.A. v. World of English,* 23 B.R. 1015 (N.D.Ga.1982); *In re W & G Dev., A.G.,* 3 Bankr.Ct.Dec. (CRR) 655 (Bankr.S.D.N.Y.1977) for the proposition that the Partnership Debtor's accounts receivables are located where the Account Debtor is located. Their reliance on these cases with respect to the instant venue motion is misplaced.

*World of English* and *W & G* pertained to the determination of whether a court had jurisdiction over debtor entities located outside the United States which had Account Debtors located within the United States. In these cases the courts found that such contacts with the forum were sufficient to retain *jurisdiction* over the party.

*Angulo* is further distinguishable. In *Angulo,* the court determined that in the interest of justice and for the convenience of the parties, an ancillary suit could be filed for discovery purposes although the suit was improperly venued. Hence the *Angulo* court did not hold that for the purposes of venue, the account receivables are located in the domicile of the account debtor.

This court believes that the best approach for determining the location of accounts receivables is to utilize the approach taken by the Uniform Commercial Code with respect to the perfection of security interests, which has been adopted by the District of Columbia under the District of Columbia Uniform Commercial Code (the "U.C.C."). The purpose of perfecting security interests under the U.C.C. is to put potential creditors and purchasers on notice that certain property of an entity may be encumbered.

U.C.C. § 9–103, which governs the proper place for perfection in multiple state transactions states in pertinent part:

"(3)(a) This subsection applies to accounts * * * and general intangibles and to goods * * * which are of a type normally used in more than one jurisdiction * * * *

(b) The law (including the conflict of laws rules) of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or nonperfection of the security interest."

D.C.Code at 28:9–103 (1992). The U.C.C. defines a debtor's location as "[its] place of business if [it] has one * * * * " *Id.*

Therefore, in order to assert a valid security interest in the Partnership Debtor's accounts receivables and to put others on notice that such accounts receivables may be encumbered, a creditor would have to perfect its lien in the jurisdiction in which the Partnership Debtor's business is located. In this case the court has found that place to be the District of Columbia. Thus, for purposes of perfection, under the U.C.C. the accounts receivables of the Partnership Debtor are located in the District of Columbia.

The approach used in the U.C.C. seems appropriate in the venue context as well because it is an approach which conforms to the expectations of the parties. To adopt a rule such as that proposed by the Partnership Debtor and the Finley Kumble

Antigua. However, even if the court were to find that the Partnership Debtor and the Finley Kumble Trustee's theory is correct, the court

disagrees with their conclusion about the location of the principal assets. *See,* Footnote 8, *infra.*

Trustee could easily result in venue being placed in distant locations having only attenuated connections to the Partnership Debtor or its creditors. The court declines to adopt such a rule and finds that the Partnership Debtor's accounts receivables, and therefore its principal assets, are located in the District of Columbia.[10]

## CONCLUSION

Having found that venue is not proper in this district, the court must determine whether to dismiss this case or transfer it to the Bankruptcy Court for the District of Columbia. This court is satisfied that transfer of the case is the appropriate choice and the District of Columbia Bankruptcy Court is an appropriate venue. The court has found that both the Partnership Debtor's principal place of business and assets are located in the District of Columbia and that the aggregate of the Partnership's debts exceeds its known assets. Transfer of this case preserves the original filing date. It is in the interest of justice and for the convenience of the parties to transfer the case rather than to dismiss it.

10. The Court notes that even if it were to find that the location of the Partnership Debtor's assets is where the Account Debtor is located, it would still find the principal assets to be located in the District of Columbia. The Partnership Debtor and the Finley Kumble Trustee cited the Government of Angola, the Home Insurance Company ("Home") and Joseph Weichselbaum as its New York Account Debtors.

First, it defies logic that the Government of Angola, which owes the Partnership Debtor more than any other entity, is a New York Account Debtor since the country of Angola is located on the continent of Africa. The Partnership Debtor and the Finley Kumble Trustee state that because the United States does not have diplomatic relations with the Government of Angola, its only presence in the United States is in New York where its mission to the United Nations is located. However, the Government of Angola also has a mission located at 1899 L Street, N.W., in the District of Columbia. Given that all services performed by the Partnership Debtor for the Government of Angola (namely lobbying Congress and the executive branch) were performed in the District of Columbia by the Washington D.C. branch of the Partnership Debtor, the court could easily find that under the circumstances of this case and for purposes

For the reasons set forth above, the court grants the Movants' motion to transfer venue of this case to the Bankruptcy Court for the District of Columbia.

of the motions, the Government of Angola was located in the District of Columbia.

Likewise, the Home Insurance Company, another purported New York Account Debtor, is a New Hampshire corporation. At the time the Partnership Debtor performed services for Home, Home's principal place of business was, in fact, New York City. However, sometime after the Partnership Debtor ceased providing legal services to Home, Home moved its headquarters to New Jersey. Thus, were the Court to apply the Partnership Debtor and Finley Kumble Trustee's theory that the accounts receivables are located where the Account Debtor is located, the Court would have to find the these accounts receivables are located in New Jersey or New Hampshire, not New York.

Perhaps the only true Account Debtor is Joseph Weichselbaum, who allegedly resides in New York City. However, the $75,000 he owes to the Partnership Debtor is outweighed by the $1,372,000 accounts receivables owed by Account Debtors located in the District of Columbia and its surrounding areas.

Therefore, even were this court to adopt the Partnership Debtor's and the Finley Kumble Trustee's legal analysis, venue would be found to be proper in the District of Columbia, not the Southern District of New York.