In re **OKLAHOMA CITY ASSOCIATES,**
**A Pennsylvania Limited**
**Partnership, Debtor.**

**Bankruptcy No. 89–10374.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 24, 1989.

---

**1.** *See also, Jungkurth v. Eastern Financial Services, Inc.,* 87 B.R. 333, 337 (E.D.Pa.1988).

Michael A. Bloom, Richard D. Gorelick, Morgan, Lewis & Bockius, Philadelphia, Pa., for movant, Sooner Federal Sav. and Loan Ass'n.

Albert G. Bixler, William H. Ewing, Hangley, Conolly, Epstein, Chicco, Foxma, Philadelphia, Pa., for debtor, Oklahoma City Associates.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Before me are motions brought by Sooner Federal Savings and Loan Association ("Sooner"), a secured creditor of Oklahoma City Associates. The movant seeks an order to the effect that venue was improperly laid in this district, or that this matter should be transferred to the Western District of Oklahoma, and an order prohibiting debtor's use of rents without court approval. The relevant facts underlying this controversy may be summarized as follows:

### I.

The debtor was formed in December, 1984 as a Pennsylvania limited partnership, and is engaged in the business of real estate development and management. At the time of its creation, the debtor assumed ownership of the Southland Shopping Center, located in Chickasha, Oklahoma, in the Western District of that state. The debtor admits that this center constitutes its principal asset.

Sooner bases its motion to prohibit use of rents upon an Assignment of Leases executed February 15, 1980 by Transol, U.S.A., Inc., a predecessor in interest to the debtor. The assignment was made "as additional security for the payment of a certain note and mortgage" made by Transol to Sooner on that date. Ex. S–2. The assignment is also incorporated into a First Amended and Supplemental Mortgage executed on December 31, 1984 by Hillcrest Investments, Ltd., another predecessor in interest of the debtor. Ex. S–3.

The debtor filed a voluntary bankruptcy petition in chapter 11 on January 30, 1989. In its bankruptcy schedules, admitted into evidence as Ex. M–2, the debtor lists in Schedule B, Statement of All Property of Debtor, the following assets: the Center,

market value of debtor's interest listed as "unknown"; money market and checking accounts in a Houston, Texas bank aggregating $1,990.24; liquidated debts arising from eleven sources in the amount of $1,101,829.60, of which $1,050,000.00 (or 95%) is comprised of "Limited Partners Notes" (Schedule B–1–P).[1]

The debtor lists four secured creditors, owed a total of $14,221,882.00. Two of these creditors are located in Oklahoma: Sooner,[2] and Hillcrest Investments, which are owed the aggregate of $5,845,000.00, or approximately 41% of the total secured debt. One of the remaining secured creditors, Sunbelt Property Group, Inc., located in New York City, has a claim in the amount of $7,449,932.00 on its "wraparound third mortgage, assignment of rents and leases, Southland Shopping Center, Chickasha, Ok.; collateral assignment of Limited Partners' Notes." Ex. M–2, Schedule A–2. The fourth scheduled secured creditor is also identified as located in New York City.[3]

The schedules further list eleven unsecured creditors, owed a total of $62,602.39. Six creditors are located in the Western District of Oklahoma, two in New York City, two in Philadelphia and one in Texas. The six Oklahoma creditors are owed $26,583.89, or approximately 43% of the total unsecured claims. The two Philadelphia creditors are debtor's counsel and its accountant, Price Waterhouse.

The debtor's books of account and records are kept and maintained by a concern in Houston, Texas. The books have apparently been audited on three occasions: once by Price Waterhouse in Philadelphia; once by that firm in conjunction with its office in Houston; and once by an account-ant based in Houston, Texas. Ex. M–2, Statement of Financial Affairs.

One of the debtor's general partners, Mr. Frank Hagen, testified that the debtor maintains no office in Oklahoma and has no employees there; moreover, the debtor has a management contract with a firm that has an office in Houston, Texas.[4] This partner further testified that while the debtor's business address is that of the debtor's Philadelphia law firm, there is no space dedicated to it in those offices. Mr. Hagen has lived in Yardley, Pa. for the past nine years, and is a real estate consultant, maintaining an office in Bala–Cynwyd, Pa. He stated that he makes decisions on behalf of the debtor in either of these two Philadelphia offices. The debtor's other general partner, he testified, is Tommy Rosenfield, a resident of New York City and Hong Kong.

Evidence at trial also showed that the debtor is not listed in its law firm's building directory, and that it does not have a listed telephone number in Philadelphia.

## II.

■ Venue for bankruptcy cases is governed by the provisions of 28 U.S.C. § 1408, which provides in pertinent part:

Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than

---

**1.** Two contingent and unliquidated claims based on arbitrations were also listed, with unknown value.

**2.** Sooner, located in the Eastern District of Oklahoma, nonetheless moves for a transfer of venue to that state's Western District, where the principal asset is located.

**3.** In its memorandum in opposition to Sooner's motion to transfer, the debtor alleged that this fourth creditor was incorrectly listed as secured. There was no evidence presented on this issue.

**4.** According to the debtor's posttrial memorandum of law at 3, the day-to-day management of the Center is handled by a local Oklahoma real estate management company, and is "coordinated through a second management company—located in Texas—which is affiliated with the Debtor."

the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district. . . .

If venue is determined to have been improperly brought under this section, then, in accordance with Bankruptcy Rule 1014(a)(2), "the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties."[5] Motions requesting a change of venue are governed by 28 U.S.C. § 1412, which provides as follows:

> A district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

Mirroring that provision, Bankruptcy Rule 1014(a)(1) provides:

> If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

■ The movant, Sooner, has the burden of demonstrating by a preponderance of the evidence that venue is improper in this district, or, if proper, that a transfer pursuant to section 1412 is warranted. *In re Pavilion Place Associates*, 88 B.R. 32, 35 (Bankr.S.D.N.Y.1988); *In re Baltimore Food Systems, Inc.*, 71 B.R. 795, 798 (Bankr.D.S.C.1986).

It is undisputed that the debtor's principal asset, the shopping center, is located in the Western District of Oklahoma. The fact that the debtor is a partnership makes the domicile or residence of the general and/or limited partners of only some relevance[6] to the question of proper venue, as a partnership's principal place of business determines its residence or domicile. *In re Nantucket Apartments Associates*, 80 B.R. 154, 156 (Bankr.E.D.Mo.1987). As one leading commentator has noted:

> While a partnership may have a principal place of business or may have a district in which it has its principal assets, it is difficult to see how a partnership can be said to have a residence or domicile. For example, even declarations of a partner concerning his own residence in a particular district do not give venue over the partnership even if effective to estop that partner individually. *Thus the only meaningful venue test with respect to a partnership may be the district in which it has its principal place of business or its principal assets in the United States.*

1 *Collier on Bankruptcy* ¶ 3.02[1][c][ii] at 3–118 (15th ed. 1988) (emphasis supplied). *See also, e.g., In re 1606 New Hampshire Ave. Associates*, 85 B.R. 298, 302 (Bankr.E.D.Pa.1988); *In re Monterey Equities–Hillside*, 73 B.R. 749, 753 (Bankr.N.D.Cal. 1987).[7] Thus, venue is improper in this district only if the movant has met its burden of showing that the debtor's principal place of business is not in the Eastern District of Pennsylvania. *In re Baltimore Food Systems, Inc.*, 71 B.R. at 798.

It is established that the location of a debtor's principal place of business is a question of fact. *Matter of Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1241 (5th Cir.1979), *cert. denied*, 444 U.S.

---

5. Since a motion for a change of venue of a bankruptcy case is a "matter concerning the administration of the estate" within the meaning of 28 U.S.C. § 157(b), it is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A). *E.g., In re A & D Care, Inc.*, 86 B.R. 43, 45 (Bankr.M.D.Pa. 1988); *In re Baltimore Food Systems, Inc.*, 71 B.R. 795, 796 (Bankr.D.S.C.1986).

6. This is of limited relevance because the partnership's principal place of business may be defined with reference to the site of major business decisions. *See infra.* The domicile of the general partners may be related to the site where decisions are made.

7. I decline to follow the conclusion of cases such as *In re Spicer Oaks Apartments, Ltd.*, 80 B.R. 142 (Bankr.E.D.Mo.1987), that the domicile of a corporation or partnership is always in the state where the entity was incorporated or created. *See generally In re Baltimore Food Systems, Inc.* (providing the historical development of venue provisions).

1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980) ("*Corco*"). *See, e.g., In re Dock of the Bay, Inc.,* 24 B.R. 811, 814 (Bankr.E.D.N. Y.1982). The "principal place of business" is occasionally cast as the "nerve center" or "financial heart" of the business, *In re Dock of the Bay, Inc.,* 24 B.R. at 814–15; *In re Lakeside Utilities,* 18 B.R. 115 (Bankr.D.Neb.1982). In any event, it is generally and correctly held that the place where the debtor makes its major business decisions constitutes the principal place of business of that debtor. *Corco,* 596 F.2d at 1243–47; *In re Pavilion Place Associates,* 88 B.R. at 35; *In re 1606 New Hampshire Ave. Associates,* 85 B.R. at 302–03; *Matter of Landmark Capital Co.,* 19 B.R. 342, 347 (Bankr.S.D.N.Y.1982), *aff'd,* 20 B.R. 220 (S.D.N.Y.1982). *Compare In re Nantucket Apartments Associates,* 80 B.R. at 156 (as apartment complex was partnership's only business, and as its day-to-day management is conducted at that site, principal place of business held to be at that location).

The general partner's testimony—that he made the major managerial decisions and that he was located in the Eastern District of Pennsylvania—basically was unrefuted. The movant did not show what decision-making authority, if any, is exercised by the other general partner. It was not shown what type of decision-making authority was vested in the real estate management firm in Texas, or its Oklahoma on site subcontractee. *Compare Corco,* 596 F.2d at 1242–44 (analyzing the jobs performed at the company's physical plant in Puerto Rico and in its executive offices in Texas). In *Corco,* the court determined, based on a rather detailed analysis of the debtor's corporate structure and its operations, that the persons in charge at the physical plant were not authorized to deviate from certain production schedules, which were developed in Texas. As personnel in Puerto Rico possessed only limited managerial authority, and the major decisions were actually made in Texas, it was held that the debtor's principal place of business was in Texas. Sooner did not offer evidence of the type of decision-making that is made on behalf of the debtor in

districts other than this one, leaving the partner's testimony uncontradicted.

Sooner is of the opinion that the debtor's local office is a sham for it has no telephone listing and no dedicated office space, its address being that of the debtor's local legal counsel. But, as in *Matter of Landmark Capital Co.,* "notwithstanding the irregularity of this arrangement, the entire record supports the [company's] position." 19 B.R. at 344. Nor do the facts here compel the conclusion reached in *In re Dock of the Bay, Inc.,* where venue was held improper where the debtor had no telephone number in the district. There, the debtor was incorporated under the laws of another state, had no business address in the state in which it sought to file bankruptcy, and its assets were all located elsewhere. The bankruptcy court held that the debtor's principal business was not conducted in its district.

█ There was no evidence that the debtor does not pay taxes or receive mail in Pennsylvania, *In re Bell Tower Associates, Ltd.,* 86 B.R. 795, 800 (Bankr.S.D.N.Y. 1988). The decisions made in Oklahoma at the site of the property were not shown to be managerial. In short, the facts in this case are not sufficient to show that the debtor's principal place of business is not in Pennsylvania. Therefore, Sooner has not met its burden of demonstrating that venue, under § 1408, does not lie in this district.

### III.

This does not, however, end the inquiry for, as stated at the outset, 28 U.S.C. § 1412 permits the bankruptcy court to transfer venue of a properly venued case in the interest of justice or for the convenience of the parties. Factors to be considered when determining whether to transfer venue were set forth in *Corco,* 596 F.2d at 1247, and have been adopted by many courts. *See, e.g., In re The Willows Limited Partnership,* 87 B.R. 684, 686 (Bankr.S.D.Ala.1988); *In re Bell Tower Associates, Ltd.,* 86 B.R. at 801; *In re 1606 New Hampshire Ave. Associates,* 85 B.R.

at 303. Under the concept of "convenience of the parties" the bankruptcy court in *Corco* had listed six concerns:

(1) The proximity of creditors of every kind to the Court;

(2) The proximity of the bankrupt (debtor) to the Court;

(3) The proximity of the witnesses necessary to the administration of the estate;

(4) The location of the assets;

(5) The economic administration of the estate;

(6) The necessity for ancillary administration if bankruptcy should result.

*Corco,* 596 F.2d at 1247. Of these concerns, the bankruptcy court concluded, and the Court of Appeals agreed, that the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate. *Id.* However, in this district it has been stated that bankruptcy courts are not bound to consider "economic administration" as the "most important" criterion for consideration. *In re Wood Family Interests, Ltd.,* 78 B.R. 434, n. 4 (Bankr.E.D.Pa. 1987). Chief Bankruptcy Judge Twardowski there found transfer of venue appropriate, citing with approval *In re Eleven Oak Tower Limited Partnership,* 59 B.R. 626 (Bankr.N.D.Ill.1986) and other cases which have held that the fact that real estate is located in a particular jurisdiction "overwhelmingly militates" in favor of transfer to that jurisdiction. *Id.* *See In re 1606 New Hampshire Ave. Associates,* 85 B.R. at 304. *See also In re Old Delmar Corp.,* 45 B.R. 883, 884–85 (S.D.N.Y.1985) ("the factor which "overwhelmingly militates in favor of transfer" is that all of the debtors' assets are located in Texas.... It is particularly appropriate for the locale of the income producing property to administer the estate").

With respect to the *Corco* factors, on balance I find that these criteria favor a transfer to the Western District of Oklahoma. Two of four secured creditors are in Oklahoma, while none of the four are in

Pennsylvania (the remaining two are located in New York). Six of eleven unsecured creditors are in Oklahoma, one in Texas, and the remaining four are split between New York and Philadelphia. On the basis of both the number and dollar amount of the debtor's claimants, *see supra,* there is a significant advantage in favor of transferring venue. *In re Fairfield Puerto Rico, Inc.,* 333 F.Supp. 1187, 1190 (D.Del.1971) (court considered both the number and dollar amount of debtor's claimants on a motion to transfer venue); *In re Island Club Marina, Ltd.,* 26 B.R. 505, 507 (Bankr.N.D. Ill.1983) (same). *But see In re Birchminster Corp. of California,* 6 B.R. 258 (Bankr.E.D.Pa.1980) (considering total number and location of creditors).

The books and records are kept and maintained in Houston, which is also where the management firm is located; that city is clearly more convenient to western Oklahoma than eastern Pennsylvania. Thus, certain witnesses (and documents) are physically closer to that district than this. Potential witnesses may include creditors not listed in the schedules, and they are likely be located near the principal asset, which is undeniably in the Western District of Oklahoma. The administration of the estate is likely to be most economically conducted where it is in close proximity to the principal asset and witnesses (including creditors). Further, it is generally accepted that the estate of a real estate partnership is most efficiently administered where its principal asset is located. *In re Pavilion Place Associates,* 88 B.R. at 36; *Matter of Landmark Capital Co.,* 19 B.R. at 348; *In re Greenridge Apartments,* 13 B.R. 510, 513 (Bankr.D.Haw.1981); *In re Macon Uplands Venture,* 2 B.R. 444 (Bankr.D.Md.1980).

While it is true that neither general partner is in that district, only one of two is based in this one. As one of these partners is domiciled in New York City and Hong Kong, and there was no evidence of his involvement in the debtor's affairs, it is unlikely that he will need to travel to Oklahoma.[8] Moreover, having chosen to pur-

8. While Mr. Hagen is the general partner most

likely to give direction to the debtor-in-posses-

chase a shopping center in Oklahoma, the debtor knowingly subjected itself to the possibility of legal action in that state, be the action by tenants or creditors. *In re Pavilion Place Associates*, 88 B.R. at 36.

Finally, I note that the "interest of justice" will be best served by transfer. As the principal asset is in Oklahoma, rulings may be required in accordance with local law, and a federal court sitting in that state is in a better position to make such decisions. *Matter of Landmark Capital Co.*, 19 B.R. at 348; *In re Bell Tower Associates, Ltd.*, 86 B.R. at 803. Here, questions have already arisen which directly concern the property and which involve an issue of first impression under Oklahoma law, by way of Sooner's motion for an order prohibiting use of rents. *See Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The question posed is whether recent amendments to Oklahoma law validate an earlier rental assignment provision of a mortgage agreement. An Oklahoma court is clearly better suited to address such issues.

Therefore, I conclude that Sooner has established by a preponderance of the evidence that this bankruptcy case should be transferred to the bankruptcy court in the Western District of Oklahoma. *See In re 1301 Connecticut Ave. Associates*, C.A. No. 88-4083, Order, n. 1 (E.D.Pa. December 30, 1988) (Reed, J.). I will leave to that court the question of whether the debtor is improperly utilizing rents from its shopping center.

An appropriate order is entered.

## ORDER

AND NOW, this 24 day of March, 1989, after consideration and for the reasons set forth in the accompanying Memorandum Opinion,

the motion brought by Sooner Federal Savings and Loan Association pursuant to 28 U.S.C. § 1408 is DENIED, while its

motion pursuant to 28 U.S.C. § 1412 is GRANTED.

Venue of this bankruptcy case is hereby TRANSFERRED to the United States Bankruptcy Court for the Western District of Oklahoma. The Deputy in Charge of Bankruptcy Operation shall transfer the file of this case to his counterpart of the United States Bankruptcy Court for the Western District of Oklahoma immediately upon the expiration of the time for appeal of this Decision and Order.

---

sion, and may even have to visit Oklahoma on occasion were the case transferred, the availability of telephones, fax machines, and overnight mail services somewhat minimize the inconvenience. Comparatively, though, the inconvenience to all parties is considerably greater if this case were not transferred.