**In re BOCA RATON SANCTUARY ASSOCIATES, Debtor.**

**Bankruptcy No. 89–12809S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 5, 1989.

Robert Levin, Adelman, Lavine, Gold & Levin, Philadelphia, Pa., Stephen A. Salvo, Ambler, Pa., Marilyn Simon, New York City, for debtor.

Nicholas J. Lepore, III, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Creditors' Committee.

Susan A. Mills, Kay, Scholer, Fierman, Hays & Handler, New York City, for Prudential–Bache.

Gabriel Schwartz, Hahn & Hessen, New York City, for FRG, Inc., FRP Ltd. Partnership, and FMI Ltd. Partnership.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

Before us is a motion filed on August 24, 1989, by B.A. Mortgage & International Realty Corporation (hereinafter "BA"), the only secured creditor of the Debtor, a joint venture partnership which owns a four-building office complex located in Boca Raton, Florida, seeking to transfer the venue of this case to the Southern District of Florida (hereinafter "SDFLA"), the locus of the Debtor's realty. The motion is opposed by (1) the Debtor; (2) FRG, Inc. (hereinafter "FRG"); FRP Limited Partnership (hereinafter "FRP"); and FMI Limited Partnership (hereinafter "FMI"). FRP is the general partner of the Debtor's managing general partner, and FRG is the corporate general partner of FRP and FMI; (3) Prudential–Bache Securities (hereinafter "PBS"), a "special limited partner" of the Debtor; and (4) the Official Unsecured Creditors' Committee of FRG (hereinafter "the Committee").

The bankruptcy cases of FRG, FRP, FMI, and four (4) other partnerships structured similarly to the Debtor arrived in this court as the result of a successful motion by one Frederick Blumberg, a creditor of FRG, FRP, and FMI, to transfer the venue of those cases from the Southern District of New York (hereinafter "SDNY") to this court, reflected in a Decision of July 28, 1989, by the Honorable Howard C. Buschman III, *In re FRG, Inc.*, 107 B.R. 461 (hereinafter "the Decision") of the SDNY. This particular Debtor filed its bankruptcy case shortly after the Decision on August 2, 1989, and this case was assigned to the undersigned as a case related to the cases of FRG, FRP, FMI, and the other four similarly-structured partnerships.

The original SDNY forum was apparently chosen by FRG because several of its limited partners, including PBS, reside there. *See* the Decision, 107 B.R. at 471. The transfer of all of these SDNY cases to this district was based on the contention that the administration of all of the Debtors is effected from this district, and hence that it is the Debtors' "nerve center." *Id.* at 465.

At a hearing of September 27, 1989, BA established that its day-to-day administration of its loan, listed at $24,614,531, has

been effected from a small Florida office located proximately to the Debtor. Although BA can legally do business only in Florida, it was noted that it may close this particular local office shortly. It was also established that BA's high-level management decisions emanate from its own parent's main offices in San Francisco, California. However, thirty (30) out of thirty-two (32) of the trade creditors and all of a number of tenants who are creditors of the Debtor by virtue of remittance of security deposits to it are located in the SDFLA, and three priority tax creditors are all located in the SDFLA. Nevertheless, the Debtor's total obligations to its general unsecured creditors and its priority creditors are only $121,316.89 and $622,781.78, respectively. Hence, BA is by far the largest of the Debtor's creditors. Finally, it appears that a significant threshold issue which will arise in a motion to restrict the Debtor's use of cash collateral which it is contemplated will be filed by BA in this case is whether, under Florida law, a clause in the mortgage providing BA a right to collect rentals upon the Debtor's default renders future rentals collected as BA's cash collateral. This same issue, under Florida law, is somewhat reluctantly addressed by us in another of the related cases, *In re Franklin Pembroke Venture II*, 105 B.R. 276 (Bankr.E.D.Pa.1989), in an Opinion of this date.

The Debtor established beyond any doubt at the hearing that its "nerve center" is in this district. The basic contention of it and its supporters is that, in light of its having related entities in numerous jurisdictions, clustered most heavily in California, Arizona, Texas, and Florida, relegating it to balkanization of its cases in districts apart from its nerve center where each particular entity's real estate and majority of creditors are located, would doom its efforts at a global reorganization of all of the FRG-related entities.

As recent tax-law changes have resulted in an increasing presence of realty partnerships as large debtors in our courts, venue issues similar to the one at bar have become quite common. The most recent published decisions in this district addressing such motions are *In re Oklahoma City Associates*, 98 B.R. 194 (Bankr.E.D.Pa. 1989) (per FOX, J.) (hereinafter cited as "*Okla.*"); *In re 1606 New Hampshire Avenue Associates*, 85 B.R. 298 (Bankr.E.D.Pa. 1988) (hereinafter cited as "*N.H.Ave.*");[1] and *In re Wood Family Interests, Ltd.*, 78 B.R. 434 (Bankr.E.D.Pa.1987) (per TWARDOWSKI, CH. J.) (hereinafter cited as "*Wood*").

Each of those cases featured, to at least some degree, a contention by the respective debtors, similar to that made here, that, since this district was the debtors' "nerve center," and venue was properly in this district pursuant to 28 U.S.C. § 1408, we should not exercise our discretion to transfer venue of the case to the locus of the realty and most of the creditors of the Debtor, pursuant to 28 U.S.C. § 1412. In *Wood*, 78 B.R. at 434 n. 3; *Okla.*, 98 B.R. at 199; and *N.H. Ave.*, 85 B.R. at 303, this court applied the following six-part test articulated in *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979), and widely adopted elsewhere in determining whether to grant a motion pursuant to 28 U.S.C. § 1412:

> (1) The proximity of creditors of every kind to the court; (2) the proximity of the bankrupt (debtor) to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; (6) the economic necessity for ancillary administration if [liquidation] should result.

In *Okla.*, *N.H. Ave.*, and *Wood*, this court uniformly granted motions to transfer venue. In a nerve-center versus locus-of-property dispute, such as these cases, items (1), (3), (4), and (6) favor a transfer of venue to the locus, while items (2) and (5)

---

**1.** Although *N.H. Ave.* was not appealed, a subsequent, somewhat closer matter (one of the major creditors also urged that this court retain jurisdiction) of a related debtor in which we reached the same result was appealed and our decision was affirmed by the district court. *In re 1301 Connecticut Ave. Associates*, C.A. No. 88–4083, (E.D.Pa. Dec. 30, 1988).

favor retention of venue at the situs of the nerve-center. In balancing these items in *N.H. Ave.*, we stated the following, 85 B.R. at 304, relying on many authorities, including *Wood:*

> Particularly persuasive is the large body of cases which hold that, while venue is proper at the situs of the management office of a debtor that manages realty located elsewhere, venue should be transferred to the locus of the realty upon motion of the creditors ...

> We do acknowledge that motions to change venue have been denied in some cases where a debtor managing realty located elsewhere seeks to maintain a bankruptcy case in the district where management is located. However, two characteristics which are absent here are significant in disposition of these cases: (1) A substantial number of creditors concur that venue should be retained by the court where the filing originally was made; ... or (2) The realty in issue is undeveloped and hence testimony regarding its value and the operation of business on it is limited ... (citations omitted). ·

As in *N.H. Ave.*, the realty in issue is developed, and the only non-insider creditor who has participated in this motion, BA, seeks to transfer venue. As in *N.H. Ave.*, 85 B.R. at 305, the motion is timely.[2] Therefore, as in *N.H. Ave.*, we conclude that "venue should be transferred to the locus of the realty...." *Id.* at 304.

The Debtor's claim of particular ease of administration and economy to it, if the case were retained here, are important factors, which may in themselves have been sufficient to withstand the motion had there been a division in the locus of realty and/or the location and desires of the creditors. *See In re Macon Associates,* Bankr. No. 89–11564F, slip op. at 14–15 (Bankr.E. D.Pa. May 31, 1989); and *In re Garden Manor Associates, L.P.,* 99 B.R. 551, 553–54 (Bankr.S.D.N.Y.1988). However, the Debtor's purported "choice" of this jurisdiction as a factor is undercut by the fact that the Debtor's parent originally chose a different forum in which to file its own case and the related cases at the outset, *i.e.,* the SDNY. The fact that BA may have its own "nerve center" in California is not very relevant. Its actual locus is in Florida, and it wishes this case to be transferred there.

Furthermore, we are swayed by another factor: allowing *Florida* bankruptcy courts to, where possible, construe difficult issues of Florida law. This factor strongly supports the transfer of this case to Florida. In *Okla., supra,* 98 B.R. at 200, Judge Fox thus relies in part, as a basis for granting such a motion, upon the difficulty in determining this very issue of the requisite acts required of a mortgagee to perfect a security interest in rents under the laws of a state other than Pennsylvania. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); and *In re TM Carlton House Partners, Ltd.,* 91 B.R. 349, 352–53 (Bankr.E.D.Pa.1988).

We therefore fail to find that the Debtor has presented evidence of sufficient weight to cause us to reach a different conclusion than this court reached on very similar facts in *Okla., N.H. Ave.,* and *Wood.* An Order granting BA's motion must therefore be entered.

---

2. We would be much less receptive to this motion if BA had delayed until after a significant issue was submitted to this court, as in the *FPV* case, or if this debtor had been one which had already been transferred here from the SDNY, as creditors seeking to change venue should have argued the propriety of the property-locus as venue in the SDNY and prevented the Debtor from having to suffer two involuntary venue changes. We believe that such motions should generally be filed no later than sixty (60) days after the case filing, before the debtor and the original filing court have expended resources in reliance upon the case's presence there.