**In re J & L PLUMBING & HEATING, INC. a/k/a J & L Associates, Debtor.**

**Bankruptcy No. 95–15409DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 21, 1995.

Joseph DiOrio, Philadelphia, PA, for debtor.

Jeffrey A. Less, Bazelon & Less, Philadelphia, PA, for Amwest Surety Ins. Co.

William Karp, Dilworth, Paxson, Kalish & Kauffman, Cherry Hill, NJ, for Midlantic Bank, successor to Bank of Old York Road.

Sam L. Warshawer, Jr., Venzie, Phillips & Warshawer, Philadelphia, PA, for Wausau, A Mutual Co.

Ina S. Weiner, Dist. Counsel, IRS, Philadelphia, PA, for IRS.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Presently at issue in this voluntary Chapter 11 bankruptcy case of a modest-sized, privately-owned mechanical contracting firm is a motion of a surety creditor to dismiss this case or transfer it to the nearby District of New Jersey ("D.N.J.") because of alleged improper venue in this jurisdiction. Finding that the movant failed to meet its burden of disproving the Debtor's assertion that its "principal asset" is litigation which is itself properly venued in this district and that no unfair tactical ploy motivated the filing in this jurisdiction, the motion is denied.

### B. FACTUAL AND PROCEDURAL HISTORY

J & L PLUMBING & HEATING, INC. ("the Debtor") filed the underlying voluntary Chapter 11 case in this jurisdiction on July 13, 1995. A motion seeking to recover retainage funds ("the Retainage Motion") on several contracts on which Amwest Security Insurance Co. ("Amwest") was surety was filed on July 19, 1995. A motion of the Debtor to utilize the cash collateral of another of its sureties on mechanical services contracts, Wausau, A Mutual Co. ("Wausau"), and its principal secured creditor, Midlantic Bank, as successor to the Bank of Old York Rd. ("the Bank"), was filed on July 21, 1995. All of these motions have been resolved to date by stipulations. Notably, a Stipulation approving a settlement of the Retainage Motion was approved by this court on September 13, 1995.

On July 31, 1995, Amwest filed the motion to dismiss this case or transfer its venue to the D.N.J. which is presently before this court for decision ("the Motion"). The Bank, in an Answer thereto, joined in the Motion. The Debtor opposed the Motion, filing an Answer and opposing Memorandum of Law on September 1, 1995. Neither Wausau nor any other creditor of the Debtor took any position on the matter. The Motion came on for a hearing on September 6, 1995.

The sole witness at the hearing was Edward Kravitz, the Debtor's chief financial officer, called by Amwest as of cross-examination. Kravitz testified that the Debtor's principal office was in Voorhees, New Jersey, in which state the Debtor was incorporated. Kravitz was unable to state precisely what business activities took place at a Philadelphia, Pennsylvania address listed for the Debtor on the Schedules, indicating that this office was apparently established to meet a present or former requirement that a firm obtaining Philadelphia City contracts have a local address. Kravitz also testified that the Debtor's modest physical assets and inventory were all located in Voorhees, New Jersey.

Kravitz identified the Debtor's business commitments as contracts with public entities—namely, housing authorities, school districts, and municipalities—in Pennsylvania

and New Jersey. Several claims against housing authorities were identified, specifically in Perth Amboy, New Jersey; Philadelphia, Pennsylvania; and Chester, Pennsylvania. A list, as of June 12, 1995, of fourteen (14) outstanding accounts receivable, totalling about $1 million, was produced. Nine (9) of the account debtors were Pennsylvania entities, whose accounts had a total aggregate face value of about $600,000. Also noted was a federal lawsuit in the local federal District Court against the Philadelphia Housing Authority ("the PHA"), which asserted a $2.2 million claim that was not included on the receivables list. Kravitz did concede, however, that billings on all receivables emanated from the Debtor's Voorhees, New Jersey, office.

The Schedules, admitted into the record, list two secured creditors, the Bank's predecessor, a former Pennsylvania institution, with a claim of about $700,000, and Wausau, listed at the address of its Philadelphia counsel, with a claim of slightly over $1 million. Priority claimants include about an equal number of Pennsylvania and New Jersey municipalities, housing authorities, and taxing authorities, as well as the Internal Revenue Service. The addresses of many small unsecured creditors are not recited, although the majority whose addresses were listed were situated in New Jersey.

After the hearing, the court accorded Amwest until September 11, 1995, to file a reply to the Debtor's Memorandum of Law and the Debtor until September 15, 1995, to counter-reply to Amwest's submission. Amwest's submission was timely, but the Debtor advised us that it stood on its initial Memorandum.

## C. DISCUSSION

■ Amwest's principal contention is that the Debtor's filing in this district is violative of the requirements for venue set forth in 28 U.S.C. § 1408, which states that

a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

The Debtor's principal rejoinder is that the instant filing satisfies 28 U.S.C. § 1408 because its principal asset, its claim and suit against the PHA, is located in this jurisdiction. It therefore asserts that Amwest cannot meet its burden of proving that "the balance is strongly in favor of transferring venue," in light of the fact that "the Debtor's choice of filing should rarely be disturbed." *In re Uslar,* 131 B.R. 22, 23 (Bankr.E.D.Pa. 1991). *See also, In re Canavos,* 108 B.R. 55, 57 (Bankr.E.D.Pa.1989); and *In re Oklahoma City Associates,* 98 B.R. 194, 197 (Bankr.E.D.Pa.1989).

It is rather clear that the Debtor has no basis other than the location of its "principal assets" on which to assert that § 1408 is satisfied by the instant filing. There is a split of authority as to the significance and meaning of the terms "domicile" and "residence" in § 1408, as applied to a corporation. Some authorities state that these terms refer to a corporate debtor's state of incorporation. *See In re EDP Medical Computer Systems, Inc.,* 178 B.R. 57, 62 (M.D.Pa.1995); *In re Spicer Oaks Apartments, Ltd.,* 80 B.R. 142, 143 (Bankr.E.D.Mo.1987); and 1 COLLIER ON BANKRUPTCY, ¶ 3.02[1][b][ii], at 3–124 (15th ed. 1995). Others state that the terms "domicile" and "residence" apply only to individuals and not to corporations. *See In re Industrial Pollution Control, Inc.,* 137 B.R. 176, 180 (Bankr.W.D.Pa.1992); and *In re Suzanne de Lyon, Inc.,* 125 B.R. 863, 866 (Bankr.S.D.N.Y.1991). Yet other courts, *e.g., In re Nantucket Apartments Associates,* 80 B.R. 154, 156 (Bankr.E.D.Mo.1987), have reached the same results as *Industrial Pollution Control* and *Suzanne de Lyon* by

equating these terms with the debtor's principal place of business, which is an express alternative basis for establishing venue.

■ Whatever interpretation is given to the terms "domicile" and "residence" appearing in § 1408 with regard to corporations, these terms will not aid the Debtor in arguing that proper venue of this case lies in this jurisdiction. The Debtor was admittedly incorporated in New Jersey and it was clearly established that the Debtor's principal place of business has, at pertinent times, been in Voorhees, New Jersey. Therefore, Amwest has met its burden of proving that the Debtor's "domicile," "residence," and "principal place of business" are in New Jersey. Finally, there is no suggestion that another case within the scope of § 1408(2) exists.

In counter-reply to the Debtor's argument that its "principal asset" is an account receivable being litigated in this jurisdiction and hence is situate here, Amwest makes several arguments which can be summarized as follows. First, it contends that the location of all of the Debtor's accounts receivable, including that from the PHA, is the location where the underlying contract was drafted and billings on it originated, i.e., in the Debtor's office in Voorhees, New Jersey. Second, it argues that the record is inconclusive in establishing that the PHA claim and the Debtor's other claims involving Pennsylvania entities are greater than those it has against New Jersey entities.

With respect to the issue of whether accounts receivable can be considered as "assets" pursuant to § 1408, and how to determine the location of such "assets" for purposes of § 1408, the parties each cite a case in their respective favor. The Debtor relies heavily on In re A & D Care, Inc., 86 B.R. 43 (Bankr.M.D.Pa.1988), while Amwest cites In re Washington, Perito & Dubuc, 154 B.R. 853 (Bankr.S.D.N.Y.1993), in response.

In analyzing these decisions, we note that they agree on one issue: that accounts receivable are "assets," the proper "location" of which can be determinative of a § 1408 question. The A & D court, on motion of a creditor, transferred the case of a debtor, the office of which was located in the Middle District of Pennsylvania ("the M.D.Pa."), to the Western District of Pennsylvania ("the W.D.Pa."), in which the Debtor had its sole service contract and where it was involved in state court litigation with the other contracting party, Butler County.

Washington was an involuntary case, filed against the debtor, a dissolved law firm, by two of its creditors in the jurisdiction in which those creditors were located, the Southern District of New York ("the S.D.N.Y."). The "Wind–Down Committee" of the Debtor, which operated the Debtor's post-dissolution activities, was located in the District of Columbia ("the D.D.C."). The court found that, in fact, the domiciles of the debtor's largest creditors were not in the S.D.N.Y. 154 B.R. at 856. See also id. at 860–61 n. 9. However, rather than base its decision on a finding as to where the "principal" accounts receivable of the debtor were located, the court embarked on an analysis of where accounts receivable should generally be deemed to be "located." The court ultimately concluded that, since the debtor would have to perfect a lien on accounts receivable at the location of its place of business in the D.D.C., the D.D.C. was the proper "location" of these assets and venue was hence appropriate only in that district.

We have uncovered only a few other cases which discuss the significance of the location of a debtor's accounts receivable in the context of a venue dispute. In In re Jolly, 106 B.R. 299 (Bankr.M.D.Fla.1989), the court considered a motion by a creditor to change venue of a case to the location of "[t]he debtor's only non-exempt asset … a lawsuit filed in … Virginia." Id. at 301. Although the court appears to assume that Virginia was a potentially proper venue under § 1408, the proximity of creditors thereto and the location of the debtor therein caused the court to retain jurisdiction in Florida at the conclusion of its § 1412–like analysis. In In re World of English, N.V., 16 B.R. 817 (Bankr.N.D.Ga.1982), the court held that the presence of proceeds from the collection of receivables plus a bank account in the United States were sufficient to establish the venue of a foreign corporation in the United States. However, in In re Kava Bowl, 41 B.R. 244 (Bankr.D.Haw.1984), a foreign corporation's

collection of some accounts and the location of a bank account and certain accounting records in the United States were deemed insufficient to establish proper venue in this country.

■■■ All of these cases support the principal that accounts receivable can properly be considered as "assets" in a venue determination. All of the foregoing cases except *Washington* suggest that the location of a debtor's accounts receivable is a determining factor in a venue determination if the particular accounts receivable are of a sufficient amount to constitute the "principal assets" of the debtor. In other words, if the principal accounts are located in a certain jurisdiction, proper venue is established in that jurisdiction under § 1408. The facts of *Washington* also support this conclusion, since the court clearly believed that the debtor's principal accounts receivable were not located in the S.D.N.Y. However, the reasoning of the *Washington* court, focusing solely on the jurisdiction in which a surety interest in the accounts could be perfected, would apparently always place the location of accounts receivable in the situs of the debtor's principal place of business, as opposed to the location of the accounts defendant.

We do not agree with the *Washington* court to the extent that its analysis would in fact always result in the location of accounts receivable as being the equivalent of the location of the debtor's principal place of business. Implicitly, neither would the *A & D* court, which would have been compelled to reach a different result under the analysis of the *Washington* court. If accounts receivable are indeed the debtor's principal asset, such accounts would seem to generally be more properly pursued in the locus of the accounts debtor. One reason is because, in most instances, the convenience of the accounts debtor would be served by such a choice. Also, under the choice of law provisions of most states, the law of the place of the contract or a weighing of the significant interests of parties thereto would result in application of the law of the jurisdiction where the contract was to be performed, which, in the case of the Debtor's contracts in issue, is the same as the location of the

accounts debtor. *See Atlantic Paper Box Co. v. Whitman's Chocolates,* 844 F.Supp. 1038, 1041–42 (E.D.Pa.1994); *In re Kaplan,* 1995 WL 500599, slip op. at *4–*5 (Bankr. E.D.Pa. August 22, 1995); and *In re III Enterprises, Inc. V,* 163 B.R. 453, 459–60 (Bankr.E.D.Pa.), *aff'd sub nom. Pueblo Chemical Inc. v. III Enterprises, Inc. V,* 169 B.R. 551 (E.D.Pa.1994). It appears preferable to try accounts receivable actions in the same forum whose law applies to the proceeding.

In sum, we believe that the analysis of the *Washington* court may have been properly influenced by the fact that the S.D.N.Y. was the location of only a small part of the debtor's accounts receivable assets. Also, *Washington* was an involuntary case in which the petitioners attempted to force the debtor to litigate its entire case in a jurisdiction other than that of the debtor's choosing. Such a case frustrates rather than serves the principle articulated in *Uslar, supra,* that the debtor's choice of forum should rarely be disturbed. In this voluntary case, by way of comparison, we find that location of the Debtor's principal accounts receivable may be a proper venue of this case under § 1408.

Amwest attempted to distinguish the result in *A & D* from the facts of this case by pointing out that the W.D.Pa. was the situs of the *A & D* debtor's *only* asset, whereas here the Debtor obviously has significant accounts receivable assets in New Jersey as well as in Pennsylvania. This point of contention is related to Amwest's argument that the Debtor has not proven that the quantum of its Pennsylvania accounts is significantly greater than its New Jersey accounts.

■■■ This issue is resolved, however, by focusing on who has the burden of proof on the facts relevant to support the Motion. As we indicated at page 390 *supra,* quoting *Uslar, supra,* the burden of proof of the facts necessary to support the instant Motion is squarely upon Amwest. In *A & D,* the burden upon the moving creditor was even stronger, because the result required transfer of the case from a forum where the debtor's only business was situated, as well as one which was chosen by the debtor, to the location of the debtor's principal assets.

Nevertheless, the *A & D* court transferred the case to the location of the debtor's centralized and account receivable asset, as opposed to obtaining venue in the location of its only place of business. The proof presented on the instant Motion would almost certainly have may have been insufficient to transfer this case to this court if it had been voluntarily filed by the debtor in the D.N.J. However, here, unlike in *A & D,* the Debtor wishes the court in the jurisdiction where it alleges its principal accounts receivable are situated to retain jurisdiction of the case.

■ Amwest therefore failed to meet its burden of proof. It has not proven, by a preponderance of the evidence, that the Debtor's principal asset is not its account receivable against the PHA. Amwest has therefore not proven that venue may not lie in this court.

■ Amwest finally argues, as what it appears to recognize is a weak second alternative, that, even if proper venue for this case lies in this court, it should be transferred to the D.N.J. "in the interest of justice and for the convenience of the parties," pursuant to 28 U.S.C. § 1412. The well-established factors to be considered in a § 1412 determination are the following, adopted from *In re Commonwealth Oil Refining Co.,* 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980):

> (1) The proximity of creditors of every kind to the court; (2) the proximity of the [debtor] to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; (6) the economic necessity for ancillary administration if [liquidation] should result.

*Accord, In re Midland Associates,* 121 B.R. 459, 460–61 (Bankr.E.D.Pa.1990); *In re Boca Raton Sanctuary Associates,* 105 B.R. 273, 274 (Bankr.E.D.Pa.1989); and *Oklahoma City Associates, supra,* 98 B.R. at 197.

Amwest has proven none of these factors. Creditors appear equally proximately situated to this court and to the D.N.J.'s Camden situs, which is less than five miles away from this courthouse. The Debtor is present here, and it apparently believed, and has thus far established, that the estate can be economically administered here. The location of the Debtor's primary asset, as per our prior discussion at pages 391–93 *supra,* is here. Witnesses likely to testify in any accounts receivable proceedings instituted are, in most instances, apparently more proximate to this jurisdiction than to the D.N.J.

Finally, this court must observe that it perceives no tactical advantage to either party from remaining here or transferring this case to the D.N.J. If any element of unfair prejudice to either party would result from our decision on the Motion, or if we believed that either party were engaged in forum shopping such as is described in, *e.g.,* L. LoPucki & W. Whitford, *Venue Choice and Forum Shopping in the Bankruptcy Reorganization of Large, Publicly Held Companies,* 1991 WISCONSIN L.REV. 11 (1991), our decision might be affected.

However, here, we have a small, privately-held corporation which has chosen one of two equally geographically-convenient jurisdictions as its place of filing, for no apparent reason except its counsel's possible desire to center the case in the jurisdiction in which it already has litigation pending. All indications are that the parties' dispute on this issue is, for the most part, a matter of principle of litigating this case in the "right" place. The burden to the court system from effecting any transfer, when this court has maintained this case thus far and is now somewhat familiar with the principal players in the case, hardly seems worth the effort. In light of all of the foregoing circumstances, the Debtor's choice of a forum should be honored.

*D. CONCLUSION*

The Motion before us will be denied in the accompanying Order.

*ORDER*

AND NOW, this 21st day of September, 1995, after a hearing of September 6, 1995, on the Motion of Amwest Surety Insurance Company to Dismiss, or in the Alternative, to

Transfer Venue of this case to the District of New Jersey ("the Motion"), and upon consideration of the parties' respective Memoranda of Law relevant to the Motion, it is hereby

ORDERED AND DECREED that the Motion is DENIED, and that this court will retain jurisdiction of this case.