**In re DEABEL, INC., Debtor.**

**Bankruptcy No. 95–15849DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 27, 1996.

John R. Crayton, Crayton & Belknap, Bansalem, PA, for Debtor.

John A. Poka, Milford, PA, pro se.

Andrew Hailstone, Kreder, Brooks, Hailstone & Ludwig, Scranton, PA, Robert Fisher–Hughes, Media, PA, for SEPOA.

Susan Rogers, Liaison, Deabel, Inc., Howell, NJ.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Before this case can proceed further in this jurisdiction, we are obliged to resolve a motion of the Sagamore Estate Property Owners Association ("SEPOA") seeking to transfer the venue of this case to the Middle District of Pennsylvania ("M.D.Pa.") ("the SEPOA Motion") and a motion of John A. Poka, Esquire ("Poka"), seeking, alternatively, dismissal of the case or its transfer to the M.D.Pa. ("the Poka Motion"). DEABEL, INC. ("the Debtor"), by counsel who replaced Poka as the Debtor's general counsel, has conceded that this case is improperly venued in this jurisdiction, but seeks to have this court retain this case on the ground that the aforesaid motions were untimely filed, or, in the alternative, to have us transfer this case to the District of New Jersey ("D.N.J.").

We conclude that the Motion of SEPOA is sufficiently timely to preclude our retention of an admittedly improperly-venued case in this court pursuant to 28 U.S.C. § 1408 and Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 1014(a)(2). However, we find that neither of the motions before us are sufficiently timely to support a change of venue for the convenience of the parties, pursuant to 28 U.S.C. § 1412, from the Debtor's first alternative from this district, in which venue for this case would be proper. Therefore, we will transfer this case to the D.N.J.

### B. FACTUAL AND PROCEDURAL HISTORY

On August 2, 1995, Poka, whose office is located in Milford, PA. in the M.D.Pa., filed this voluntary Chapter 11 corporate bankruptcy case in this jurisdiction on behalf of the Debtor, supporting this venue choice by

reflecting a Philadelphia address for the Debtor as c/o M. Burr Keim Co., a local realtor. At a status hearing (which this court regularly schedules in all of our cases just prior to the expiration of exclusivity) to establish a deadline for the filing of a plan and a disclosure statement, on November 22, 1995, it came to light that neither a proper mailing matrix nor an application for his appointment as the Debtor's general counsel had been filed by Poka. Moreover, despite the assertions of the Debtor's principals, Mortimer Rogers, Esquire, a former New Jersey lower court justice ("Mortimer"), and his daughter, Susan Rogers ("Susan"), that they had paid Poka a $9,500 retainer, Poka indicated that a dispute with the principals would result in his likely replacement. We urged the Debtor to promptly obtain replacement counsel and for Poka to refund any retainer paid under these circumstances.

Shortly thereafter, the Debtor hired its present locally-based counsel. Counsel promptly filed the matrix, and agreed, at a continued status hearing on December 7, 1995, to file a plan and disclosure statement on behalf of the Debtor by March 1, 1996. When Poka refused to refund any of the $9,500 retainer, an adversary proceeding, No. 96–0008 ("the Proceeding"), was filed by the Debtor, on January 5, 1996, against him and his wife for recovery of this sum and to undo a certain transfer of property to them, both in alleged consideration for Poka's services. At a hearing of February 7, 1996, on Poka's motion to extend the established February 5, 1996, Proceeding answer date, the parties agreed to the entry of an Order extending the answer date until February 28, 1996, and continuing the trial date of the Proceeding from February 27, 1996, to March 6, 1996.

On January 12, 1996, SEPOA filed a motion seeking relief from the automatic stay to resume litigation of a class action commenced in the Court of Common Pleas of Pike County ("the C.P.Court") on May 26, 1995, against, inter alia, the Debtor and Mortimer ("the Stay Motion"). The C.P.Court is in the M.D.Pa. The only other filing by SEPOA in this case previous thereto was an Entry of Appearance filed by its predecessor counsel on October 20, 1995. Just prior to the hearing on the Stay Motion, SEPOA filed the SEPOA Motion for change of venue before us, and the parties agreed to continue the hearing on the Stay Motion to March 6, 1996, the date of the hearing on the SEPOA Motion.

On February 24, 1996, Poka commenced the filing of several motions aimed at putting off the filing of his answer to the Complaint in the Proceeding and the trial to which he had agreed on February 7, 1996. Among these filings was the Poka Motion to dismiss this case or to change its venue, which is also before us.

On March 6, 1996, the parties agreed to make a record on the venue-related motions; file briefs on this issue by March 15, 1996; and put off the hearings on the Stay Motion and the Proceeding until March 26, 1996. This court committed itself to making a decision on the venue-related motions by March 25, 1996, which is reflected in an Order of March 25, 1996, the grounds for which are explained in this Opinion.

The most pertinent testimony in the record was from Mortimer, called as a witness by SEPOA and Poka. Mortimer testified that, for 18 years, he has owned a vacation home in Sagamore Estates, a development which was built in the Pocono Mountains in the M.D.Pa. by the Debtor in 1965. In May 1994 Mortimer and Susan, both of whom maintain permanent residences in Monmouth County, New Jersey, acquired the Debtor, with the aim of rehabilitating the deteriorating roads, recreational facilities, and water system of Sagamore Estates. The debtor also changed its registered address from Milford, Pennsylvania, to the permanent home address of Mortimer and Susan in New Jersey. The registered address was again changed to its present Philadelphia address in mid-May 1995. However, most of the administrative decision-making activity on behalf of the Debtor continues to take place in New Jersey.

This court also carefully reviewed the venue of the creditors listed in the Debtor's Schedules, which was admitted into the record. The Schedules identified eight creditors in the M.D.Pa., six in New Jersey (all apparently related to Mortimer and Susan), three in this jurisdiction, and four in other jurisdictions.

## C. DISCUSSION

The statutory provisions relative to venue of bankruptcy cases are 28 U.S.C. §§ 1408(1), 1412, which provide as follows:

### § 1408. Venue of cases under Title 11

Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; ...

.     .     .     .     .

### § 1412. Change of Venue

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

F.R.B.P. 1014, promulgated in furtherance of these provisions, states as follows:

**(a) Dismissal and Transfer of Cases.**

(1) *Cases Filed in Proper District.* If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

(2) *Cases Filed in Improper District.* If a petition is filed in an improper district, on timely motion of a party in interest and after hearing on notice to the petitioners, the United States Trustee, and other entities as directed by the court, the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

The Debtor's counsel conceded that, since the Debtor's change of its address from New Jersey to Philadelphia occurred less than 90 days prior to the Debtor's bankruptcy filling, this case was improperly venued in this district. However, noting that it had filed not only the Proceeding but also its plan and disclosure statement in this jurisdiction, he urged this court to retain jurisdiction. In the alternative, he requested a transfer to the Debtor's alleged "nerve center," the D.N.J.

Most authorities agree with the statement of the court, in *In re EDP Medical Computer Systems, Inc.,* 178 B.R. 57, 63 (M.D.Pa.1995), that, in contrast to retaining the case, as was permitted under the prior law, 28 U.S.C. § 1477(a) (repealed),

a bankruptcy court faced with an improperly venued action must either dismiss the action or transfer it, if transfer is in the interest of justice or for the convenience of the parties, pursuant to Rule 1014(a)(2) and § 1406(a).

*Accord, e.g., In re Great Lakes Hotel Associates,* 154 B.R. 667, 671 (E.D.Va.1992); *In re ICMR, Inc. v. Tri–City Foods, Inc.,* 100 B.R. 51, 54 (D.Kan.1989); *In re Peachtree Lane Associates, Ltd.,* 188 B.R. 815, 831–32 (N.D.Ill.1995); *In re Columbia Western, Inc.,* 183 B.R. 660, 664–65 (Bankr.D.Mass.1995); *In re Berryhill,* 182 B.R. 29, 31 (Bankr. W.D.Tenn.1995); *In re Petrie,* 142 B.R. 404, 406 (Bankr.D.Nev.1992); *In re Sporting Club at Illinois Center,* 132 B.R. 792, 798 (Bankr. N.D.Ga.1991); *In re Pick,* 95 B.R. 712, 715–16 (Bankr.D.S.D.1989); and *In re Greiner,* 45 B.R. 715, 716 (Bankr.D.N.D.1985).

There are, however, two caveats which are worthy of consideration. The first is that, despite this seemingly unqualified dictate that an improperly-venued case must be dismissed or transferred, F.R.B.P. 1014(a)(2) provides, referencing 28 U.S.C. § 1406(b) in an Advisory Committee note as support, that the retention of an improperly-venued case is permitted if objections thereto are not "timely." We note that 28 U.S.C. § 1406 is a general district court statute addressing "cure or waiver of [venue] defects," and it is cited by *EDP, supra,* and several of the other cases cited in the foregoing paragraph.

The second is the presence of several cases holding that, when the convenience of the parties dictates otherwise, a court which is an improper venue can retain an improperly-venued case despite a "timely" objection thereto. *See In re Lazaro,* 128 B.R. 168 (Bankr.W.D.Tex.1991); *In re Leonard,* 55 B.R. 106, 108–09 (Bankr.D.D.C.1985); and *In re Boeckman,* 54 B.R. 110 (Bankr.D.S.D. 1985).[1] The foregoing cases rest on the notion that, since a case could be *transferred to* an improper venue under 28 U.S.C. § 1412 for the convenience of the parties, it would be illogical to read 28 U.S.C. § 1408 as precluding *retention by* an improper venue for the parties' convenience. In fact, as these cases point out, the same result could be achieved by transferring a case to a proper venue, the court in which could then entertain a § 1412 motion and send the case back to the original, "improper" venue.

These latter cases raise an interesting point, but one which is not only rejected by the line of cases cited on page 7 *supra* but also is not relevant on the facts here. Not even the Debtor is able to argue that the convenience of the parties would be served by retaining this case here. Therefore, even if we adopted the reasoning of *Lazaro, Leonard,* and *Boeckman,* we would still be faced with only the alternatives of dismissal or transfer of the venue of this case should the objections to venue of this case be found to have been timely.

■ The timeliness or waiver issue bears considerably more relevance to the instant facts. We have repeatedly held that motions seeking changes of venue under 28 U.S.C. § 1412 must be brought within 60 days after the case filing, or will be deemed too late. *See In re First Summit Development Corp.,* 1989 WL 118552, slip op. at *1 (Bankr. E.D.Pa. Oct. 5, 1989); *In re Boca Raton Sanctuary Associates,* 105 B.R. 273, 275 n. 2 (Bankr.E.D.Pa.1989); and *In re 1606 New Hampshire Ave. Associates,* 85 B.R. 298, 305 (Bankr.E.D.Pa.1988).

However, while we believe that the bright-line 60–day rule for § 1412 motions makes sense, we note that courts have properly been more tolerant of later filings of motions to transfer improperly-venued cases than of motions to transfer properly-venued cases for the convenience of the parties. A distinction appears logical to us, because the improperly-venued case should never have been brought to the court in which it was filed in the first instance.

In *EDP, supra,* the court held that the motion to change venue was timely, even though it was apparently filed over a year and a half after the bankruptcy case was filed, 178 B.R. at 59, 63, because the movant's "interest" in the case had not been stirred until the filing of an adversary complaint against it. *But see In re Jones,* 39 B.R. 1019, 1020 (Bankr.S.D.N.Y.1984) (motion to change venue filed one and a half years after the case was filed was deemed untimely).

■ We believe that, if either a party has submitted itself to the jurisdiction of the court by litigating a matter of substance, or if substantial developments have transpired in the case in general, irrespective of the moving party's participation in same, waiver of an objection to venue could be found.

■ We find that Poka's actions reflected a waiver of any objections to venue in this court in several respects. First, he was the very counsel who filed the Debtor's case in this jurisdiction. When confronted with this anomaly, Poka claimed that Mortimer had misled him regarding the date of the transfer of the Debtor's office to Philadelphia. However, we find no evidence that Mortimer or anyone else in fact misled Poka regarding facts pertinent to this issue. We suspect that Poka was simply chargeable with negligence in failing to investigate the facts and/or making himself knowledgeable about the provisions of § 1408. Had the Debtor but delayed its filing until September, the Debtor would have had its registered office in this jurisdiction for a greater part of the 180–day period than in any other venue, and venue of this case would have been proper here. No reason for not delaying the filing was suggested.

---

1. However, the same judge who decided *Boeckman* appears to have come to an opposite conclusion in *Pick, supra.*

Secondly, on February 7, 1996, Poka explicitly agreed to litigate the Proceeding in this jurisdiction, specifically on March 6, 1996. His filing of the Poka Motion in lieu of the answer that he agreed and was ordered to file was such a transparent effort to avoid a trial on the merits that we must express, for this reason, our regret that venue must be transferred. However, we emphasize that our action in this regard is in no sense on the basis of the Poka Motion.[2]

 Rather, our action is compelled by the presence of the SEPOA Motion. It is true that the SEPOA Motion was filed more than 60 days after SEPOA's original counsel filed an Entry of Appearance, and hence when SEPOA's then-counsel was clearly aware of the filing of this case in this jurisdiction. It is also true that SEPOA filed the substantive Stay Motion prior to its filing of the SEPOA Motion. However, neither the Stay Motion nor any other matter of substance involving SEPOA was litigated prior to the listing of the SEPOA Motion.

Finally, it is further true that the Debtor has filed its plan and disclosure statement in this case. However, not so much as the hearing on the disclosure statement has as yet transpired. The only other matter of substance arising in this case was the filing of the Proceeding against Poka, and that matter has not been tried. We therefore cannot conclude that sufficiently substantial developments have transpired overall in this case in general as to render the SEPOA Motion untimely filed.

We will therefore sustain SEPOA's request that this court relinquish its jurisdiction over this case.

 With respect to the determination of the appropriate transferee jurisdiction, we begin from the observation that 28 U.S.C. § 1408 allows the Debtor considerable leeway in its choice. The Debtor may choose the locus of either its "domicile, residence, principal place of business in the United States, or principal assets in the United States." 28 U.S.C. § 1408(1). As long as there is no attempt by one party to gain an unfair tactical advantage over other parties by requiring them to commute to a distant and inconvenient situs, the Debtor may pick any of the alternative locations described in § 1408(1), subject to a subsequent transfer of the case on a timely § 1412 motion. *See generally In re J & L Plumbing & Heating, Inc.,* 186 B.R. 388, 390–93 (Bankr.E.D.Pa. 1995) (venue proper even though it was the situs of only certain litigation of the debtor, which was determined to be the debtor's "principal asset").

 The Debtor's place of incorporation, and hence its apparent domicile, *see id.,* at 390–91, is in Pennsylvania. The place of its principal assets is in the M.D.Pa. However, despite its recent registered address in this jurisdiction, the "nerve center," or principal place of the Debtor's business, *see, e.g., Boca Raton, supra,* 105 B.R. at 274, continues to be in New Jersey. Therefore, the D.N.J. is one of the proper venues for this case.

As we noted in *Boca Raton, supra,* 105 B.R. at 274–75 & n. 2, venue in a case involving a debtor which has a nerve center in one jurisdiction but which administers a real estate asset in another jurisdiction can be rather easily changed to the venue of the real estate pursuant to a *timely* § 1412 motion. However, the SEPOA Motion was filed well beyond the 60–day bright-line time limitation established by this court for the timely filing of *such* motions. We perceive no great unfair prejudice to any party from the transfer of this case to the D.N.J., the boundary of which is contiguous with Milford, PA. We will therefore honor the Debtor's first alternative to our retention of this case, and direct that this case be transferred to the D.N.J.

## D. CONCLUSION

This Opinion supports our Order of March 25, 1996, transferring the venue of this case to the D.N.J.

---

**2.** The brief filed by Poka also is noteworthy because it references many "facts" not supported by the hearing record. Apparently, these assertions are largely in support of Poka's contention, irrelevant to the Motion before us, that the $9,500 in payments were in consideration for his services in defending the Debtor in the C.P. Court.